

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>        Recurrido | Certiorari |
| v. | 2009 TSPR 158 |
| Jaime Santana Vélez<br>        Peticionaria | 177 DPR ____ |

Número del Caso: CC-2007-65

Fecha: 13 de octubre de 2009

Tribunal de Apelaciones:

        Región Judicial de  Mayagüez, Panel XIV

Juez Ponente:
                Hon. Zaida Hernández Torres

Abogado de la Parte Peticionaria:

                Lcdo. Víctor Santos Rivera

Oficina del Procurador General:

                Lcdo. Ricardo Alegría Pons
                Procurador General Auxiliar

Materia: Art. 86 C.P.

Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las decisio  nes del Tribunal. Su distribución electrónica se hace como   un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.

                             CC-2007-65

Jaime Santana Vélez

    Peticionario

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 13 de octubre de 2009

Este caso nos brinda la oportunidad de analizar el sistema de imposición de penas del Código Penal de 1974 a la luz de la interpretación que del derecho a juicio por jurado cobijado por la Enmienda Sexta de la Constitución de los Estados Unidos ha realizado el Tribunal Supremo de los Estados Unidos. Veamos los hechos que originan esta controversia.

I.

El 29 de noviembre de 2003, el señor Jaime Santana Vélez (en adelante el Sr. Santana Vélez) atropelló y causó la muerte al señor Atilano Vázquez

Santiago de 83 años de edad. Se le celebró juicio por jurado y fue encontrado culpable del delito de homicidio involuntario codificado en el artículo 86 del Código Penal de 1974. *Véase* 33 L.P.R.A. sec. 4005 (2001) (derogado). A pesar de que el delito de homicidio involuntario bajo el Código Penal de 1974 tiene una pena fija de un (1) año de reclusión en ausencia de atenuantes o agravantes, el Tribunal lo sentenció a una pena de tres (3) años de reclusión bajo el privilegio de sentencia suspendida y una multa de $5,000. El foro de instancia no celebró vista para la presentación de prueba sobre agravantes ni realizó determinación alguna con relación a éstos en la sentencia.

El Tribunal de Apelaciones confirmó la sentencia apelada. Concluyó que se probaron al menos dos agravantes durante el juicio. El foro intermedio, a base de la exposición narrativa de la prueba, entendió que el acusado indujo a perjurio a una de las testigos de cargo al comunicarse telefónicamente con ésta en tres ocasiones, previo a la celebración del juicio. Por otro lado, dicho foro consideró que la exagerada velocidad a la que se probó que el peticionario conducía, equivalía a una negligencia crasa. Ambos hechos constituían circunstancias agravantes que, según el foro intermedio, validaban la sentencia impuesta.

El Sr. Santana Vélez acudió ante este Tribunal arguyendo que la sentencia impuesta está reñida con su derecho a juicio por jurado y lo resuelto por el Tribunal Supremo de Estados Unidos en *Apprendi v. New Jersey*, 530

U.S. 466 (2000) y su jurisprudencia interpretativa, debido a que un jurado no determinó los agravantes de la pena más allá de duda razonable.

## II.

La Enmienda Sexta de la Constitución de los Estados Unidos garantiza que en todo proceso criminal el acusado disfrutará del derecho a un juicio rápido y público por un jurado imparcial del estado y distrito donde se haya cometido el delito. *Véase* Const. EE.UU., enmd. VI. Igual garantía ofrece la Constitución del Estado Libre Asociado de Puerto Rico en su artículo II sección 11. *Véase* Const. E.L.A. art. II, sec. 11. El derecho a juicio por jurado de la Enmienda Sexta es un derecho fundamental que aplica a los estados a través de la cláusula del debido proceso de ley de la Enmienda Decimocuarta y, por lo tanto, a Puerto Rico.[1] *Véase Duncan v. Louisiana*, 391 U.S. 145 (1968); *Pueblo v. Laureano Burgos*, 115 D.P.R. 447 esc. 6 (1984); *Pueblo v. Martínez Torres*, 116 D.P.R. 793 esc. 14 (1986).

La función esencial del jurado es adjudicar los hechos correspondientes del caso ante su consideración a base de

---

[1] A pesar de lo resuelto en *Balzac v. Porto Rico*, 258 U.S. 298 (1922), el Profesor Álvarez González explica que "[d]esde que *Duncan v. Louisiana*, 391 U.S. 145 (1968) resolvió que [el derecho a juicio por jurado] es 'fundamental' y, como tal, aplicable a los estados . . . parece razonable concluir que ese derecho es aplicable a Puerto Rico bajo la doctrina de incorporación territorial". J.J. Álvarez González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos*, Bogotá, Editorial Temis S.A., 2009, pág. 428 citando a D.M. Helfeld, *How Much of the United States Constitution and Statutes Are Applicable to the Commonwealth of Puerto Rico*, 110 F.R.D. 452, 458 (1986) y J.J. Álvarez González, *La protección de los derechos humanos en Puerto Rico*, 57 Rev. Jur. U.P.R. 133, 150 (1988).

la evaluación de la prueba presentada y recibida en el juicio. Regla 111 de Procedimiento Criminal, 34 L.P.R.A. Ap. R. 111; E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Editorial Forum, 1993, Vol. II, sec. 15.4, pág. 319. Luego de determinados los hechos, y de conformidad con las instrucciones del juez, el jurado aplica el derecho, emitiendo el veredicto que corresponda, siendo quien decide la cuestión última de culpabilidad o inocencia del acusado. Chiesa Aponte, *op cit.*, pág. 320; W.R. La Fave & J.H. Israel & N.J. King & O.S. Kerr, *Criminal Procedure*, Thomson-West, Minnesota, 2007, sec. 22.1 (a), pág. 5.

Si bien el veredicto del jurado representa la decisión de ese cuerpo sobre la responsabilidad criminal del acusado, la adjudicación de la pena, en caso de veredicto de culpabilidad, le corresponde al juez pues el derecho a juicio por jurado no se extiende a dicha etapa. *Véase Spaziano v. Florida*, 468 U.S. 447 (1984). *Véase también* O.E. Resumil de Sanfilippo, *Derecho Procesal Penal*, Equity de Puerto Rico, Hato Rey, 1990, sec. 5.3, pág. 68. El Tribunal Supremo de los Estados Unidos, sin embargo, en una serie de casos comenzó a cuestionar los esquemas de sentencias establecidos por los estados a la luz de las exigencias del debido proceso de ley, del derecho a juicio por jurado cobijado por la Enmienda Sexta y del quantum de

prueba requerido para determinar factores agravantes de la pena más allá del máximo permitido por ley.[2]

Así pues, en *Apprendi v. New Jersey*, 530 U.S. 466 (2000), el Tribunal Supremo resolvió que cualquier hecho que agrave la pena de un delito más allá del máximo estatutario, salvo aquellos hechos relacionados con la reincidencia, tiene que ser determinado por el jurado más allá de duda razonable o ser aceptado por el acusado. ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") *Apprendi v. New Jersey*, *supra*, pág. 490. Indicó el Tribunal en esa ocasión que históricamente ha existido una conexión entre el veredicto de los jurados y la sentencia determinada por los jueces, por lo que la pena impuesta al acusado tiene que corresponder a todos los hechos determinados por el jurado más allá de duda razonable.

De esta manera, para propósitos del derecho a juicio por jurado, el Tribunal estableció que cualquier hecho que agrave la pena más allá del máximo estatutario, excepto

---

[2] *Véase McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *Jones v. United States*, 526 U.S. 227 (1999). En estos casos pre-*Apprendi* el Tribunal intentaba diferenciar si el hecho agravante de la pena se trataba de elementos del delito ("elements of the offense") los que tenían que ir a un jurado o de factores agravantes ("sentencing factors") que, originalmente, no tenían que ir a un jurado. Para un resumen adecuado de los casos antes citados y su final desenlace en *Apprendi*, *véase* W.R. La Fave & J.H. Israel & N.J. King & O.S. Kerr, *Criminal Procedure*, Thomson-West, Minnesota, 2007, sec. 26.4 (i), págs. 787-793.

aquellos relacionados con la reincidencia, debe ser determinado por el jurado más allá de duda razonable, sin hacer distinción entre si los hechos agravantes de la pena son elementos del delito ("elements of the offense") o factores agravantes ("sentencing factors").

En *Apprendi*, el acusado se declaró culpable de tres delitos graves –dos cargos de segundo grado por posesión ilegal de armas que conllevaban una pena de 5 a 10 años de reclusión cada uno y otro de tercer grado por la posesión de explosivos que conllevaba una pena de 3 a 5 años de reclusión– por realizar disparos en contra de la residencia de una familia afro-americana. *Apprendi v. New Jersey*, *supra*, págs. 469-470. Según el acuerdo con Fiscalía, las penas correspondientes a los cargos de posesión ilegal de armas se cumplirían consecutivamente entre sí, pero concurrentes con la pena por la posesión ilegal de explosivos. *Id*. pág. 470. De esta manera, Apprendi se enfrentaba a una pena máxima agregada de 20 años. No obstante, la pena de uno de los cargos por posesión ilegal de armas podía ser agravada hasta un término de 20 años de reclusión si el juez determinaba, por preponderancia de la prueba, que el delito se cometió con el propósito de intimidar por razón de raza, color, género, incapacidad, religión, orientación sexual u origen étnico. Con la pena agravada en ese delito, Apprendi se exponía a una pena máxima agregada de 30 años.

En el acuerdo, la Fiscalía se reservó la prerrogativa de solicitar la pena agravada y Apprendi el derecho de

impugnarla por considerarla inconstitucional. Luego de la celebración de una vista y la presentación de prueba por parte de la Fiscalía, el juez determinó como cuestión de hecho, que existía base para la pena agravada, por lo que impuso una pena de 12 años en ese delito, mayor al límite de 10 años que establecía la ley. *Id*. pág. 471. El Tribunal Supremo anunció la norma que transcribimos anteriormente y declaró inconstitucional la sentencia impuesta, pues el estatuto en contra de los crímenes de odio permitía que el juez impusiera una pena mayor a la que se hubiese impuesto con el *sólo veredicto de culpabilidad del jurado*. *Id.* págs. 482-83.

Esta norma ha sido consistentemente reiterada por el Tribunal Supremo de los Estados Unidos. En *Blakely v. Washington*, 542 U.S. 296 (2004), el Tribunal revocó una sentencia de 90 meses impuesta por un juez por el delito de secuestro por estar reñida con la norma de *Apprendi*. En esa ocasión, el delito en particular tenía un intervalo de pena de 49 a 53 meses. Dicha pena podía ser agravada si el juez encontraba "substantial and compelling reasons justifying an exceptional sentence." *Blakely v. Washington*, *supra*, en la pág. 299. El estado de Washington arguyó que el delito de secuestro era clasificado como un delito grave B ("class B felony") para los cuales, por estatuto, se establecía que tendrían una pena no mayor de 10 años. De esta manera, arguyeron que no había problema constitucional con *Apprendi* toda vez que la pena impuesta

estaba dentro del límite estatutario.  *Id*. en la pág. 303.

El Tribunal descartó este argumento indicando que:

> [T]he "statutory maximum" for *Apprendi* purposes
> is the maximum sentence a judge may impose *solely*
> *on the basis of the facts reflected in the jury*
> *verdict or admitted by the defendant*. . . .  In
> other words, the relevant "statutory maximum" is
> not the maximum sentence a judge may impose after
> finding additional facts, but the maximum he may
> impose *without* any additional findings. When a
> judge inflicts punishment that the jury's verdict
> alone does not allow, the jury has not found all
> the facts "which the law makes essential to the
> punishment," . . . and the judge exceeds his
> proper authority.
> *Blakely v. Washington*, *supra*, en las págs. 303-04.

Así pues, el Tribunal aclaró en ese caso que el máximo estatutario no es aquella pena máxima que podría imponerse al considerar hechos agravantes de la pena, sino la pena máxima que el juez puede imponer con el sólo veredicto de culpabilidad del jurado, sin tener que realizar determinaciones adicionales.

Esta norma fue extendida al ámbito federal en *Booker v. U.S.*, 543 U.S. 220 (2005).  En dicha ocasión, el Tribunal Supremo indicó que las guías federales de imposición de penas ("Federal Sentencing Guidelines"), las cuales regían la discreción de los jueces de distrito federales al imponer penas, eran inconstitucionales tal y como fueron aprobadas por el Congreso, por permitir que dichos jueces determinaran por preponderancia de la prueba circunstancias agravantes de la pena en ausencia del jurado.  Según el Tribunal, el sistema de los "guidelines" y el sistema declarado inconstitucional en *Blakely* eran similares, pues en ambos sistemas los jueces estaban

obligados a imponer una pena establecida en un intervalo, siendo incapaces de imponer una sentencia mayor de no encontrar circunstancias agravantes.

El Tribunal Supremo, no obstante, salvó la constitucionalidad de las guías al hacerlas discrecionales y no mandatorias, estableciendo un sistema de discreción total a los jueces de distrito federales en relación con la imposición de penas, sujeta a una revisión en apelación bajo el estándar de razonabilidad ("reasonableness")[3]. *Booker v. U.S.*, *supra*, pág. 261. En la medida en que dicho sistema permite que el juez imponga cualquier pena dentro de un intervalo, independientemente de la determinación de agravantes o atenuantes, éste no tiene problemas constitucionales con *Apprendi*, pues el juez no necesita determinar hechos por sí mismo para agravar la pena, sino que actúa dentro de la órbita de poder que un veredicto de culpabilidad le concede.

Hace apenas dos (2) años, en *Cunningham v. California*, 549 U.S. 270 (2007), el Tribunal Supremo reiteró la norma de *Apprendi*, *Blakely* y *Booker*. En dicho caso, el Estado de California tenía un sistema de imposición de penas en el cual, *en ausencia de que el juez encontrara agravantes o atenuantes*, éste venía obligado a imponer la pena fija intermedia. En el caso en cuestión, la pena fija intermedia era de 12 años, de mediar circunstancias atenuantes la pena fija era de 6 años y de mediar

---

[3] En cuanto al estándar de razonabilidad (reasonableness) y su aplicación por los Tribunales de Circuito Federales, *véase Rita v. U.S.*, 551 U.S. 338 (2007).

circunstancias agravantes la pena fija era de 16 años. El juez, al encontrar seis (6) circunstancias agravantes y una atenuante, impuso la pena máxima de 16 años. El Tribunal Supremo revocó dicha sentencia. Indicó que dicho sistema contravenía la norma de *Apprendi*, *Blakely* y *Booker*, por ser el juez y no el jurado el que encontraba los hechos que podían agravar la pena más allá del límite estatutario.

El Tribunal descartó varios argumentos esbozados por el Tribunal Supremo de California, el cual había validado dicho sistema. California arguyó que el límite estatutario era el límite superior del intervalo, toda vez que el sistema de imposición de penas establecido simplemente autorizaba a los jueces a tomar en cuenta hechos que tradicionalmente eran incidentales a la determinación de una sentencia apropiada en un intervalo determinado. *Cunningham v. California*, *supra*, pág. 289. En ese sentido, California comparó su sistema al sistema federal post-*Booker*. *Id*., pág. 291.

El Tribunal Supremo indicó que la ley de California establecía que los jueces debían ("shall") imponer el término intermedio como sentencia, en ausencia de agravantes o atenuantes, por lo que los jueces no tenían discreción para imponer cualquier pena dentro de un intervalo, sino que estaban obligados a imponer la pena fija intermedia establecida. *Id*. en la pág. 292. El sistema, por tanto, no era comparable al sistema federal post-*Booker* en el cual los jueces tienen total discreción al momento de imponer penas, independientemente de la

determinación de agravantes o atenuantes. Por otro lado, el Tribunal esbozó que la constitucionalidad del sistema adoptado a la luz de *Apprendi*, *Blakely* y *Booker* no dependía de lo que California podía considerar como hechos que tradicionalmente los jueces determinaban en la imposición de penas, sino que la norma seguía siendo que todo hecho que agrave la pena de un delito más allá del límite estatutario, salvo aquellos relacionados con la reincidencia, tiene que ser determinado por un jurado y probado más allá de duda razonable.

Por último, el Tribunal ofreció dos alternativas a California y a los demás estados para mantener un sistema de sentencias determinadas que no violaran la Enmienda Sexta: 1) establecer un sistema en el cual los jurados durante el juicio, o luego del veredicto de culpabilidad, determinen los agravantes de la persona convicta o 2) establecer un sistema de genuina discreción al juez, en el cual éste pueda imponer cualquier pena que entienda pertinente dentro de un intervalo determinado, utilizando las circunstancias atenuantes y agravantes como meras guías de su discreción.

Así pues, es clara la norma de *Apprendi* y su jurisprudencia interpretativa según esbozada por el Tribunal Supremo. Cualquier hecho que agrave la pena de un acusado más allá del límite estatutario, salvo aquellos hechos relacionados con la reincidencia, debe ser determinado por un jurado más allá de duda razonable. El límite estatutario es aquella pena máxima que el juez puede

imponer con el sólo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales. Ante sistemas de sentencias determinadas, existen dos vías para cumplir con la norma: 1) que sea un jurado, durante el juicio o con posterioridad a éste, el que encuentre las circunstancias agravantes de la pena más allá de duda razonable o 2) establecer un sistema de genuina discreción al juez en el cual éste tenga la autoridad para establecer *cualquier* pena dentro de un intervalo, independientemente de la determinación de agravantes y atenuantes, utilizando éstos como meras guías de su discreción.

Debemos analizar el sistema de imposición de penas establecido bajo el Código Penal de 1974 para auscultar su validez a la luz de la normativa establecida por el Tribunal Supremo de los Estados Unidos. Veamos.

III.

A diferencia del Código Penal de 2004 en el cual las penas correspondientes a los delitos están determinadas por el grado del mismo, el Código Penal de 1974 establece una pena fija particular para cada delito, la cual puede variar dependiendo de la existencia de atenuantes o agravantes. Así, el delito de homicidio involuntario codificado en dicho Código, en su parte pertinente, expresa:

> . . .
>
> Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, **se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de**

> **mediar circunstancias atenuantes, podrá ser
> reducida hasta un mínimo de seis (6) meses y un
> día**. El tribunal podrá imponer la pena de
> restitución en adición a la pena de reclusión
> establecida, o ambas penas.
>
> . . .
>
> Art. 86 del Código Penal de 1974, 33 L.P.R.A. sec.
> 4005. (Énfasis suplido).

De la lectura de dicho artículo, surge que el delito de homicidio involuntario, cuando es causado al conducir un vehículo de motor, conlleva una pena **fija** de un (1) año. Para que un juez pueda imponer una pena mayor o menor a la pena fija de un año, **es necesario** que se determinen circunstancias agravantes o atenuantes. Con el sólo veredicto de culpabilidad del jurado, el juez sólo puede imponer la pena fija establecida. Por lo tanto, el límite estatutario bajo *Apprendi* y *Cunningham* es el término fijo establecido de un (1) año. Nótese que el juez no tiene discreción para establecer otra pena, si no es mediante la determinación de hechos adicionales al veredicto del jurado, pues el artículo en cuestión establece que *"se le impondrá* pena de reclusión por un término *fijo* de un año"*. El artículo no establece que el juez *podrá* imponer, sino que ordena que se le imponga dicha pena fija, limitando la discreción de éste en ese ejercicio. En ese sentido, el texto de la ley es impositivo, no permisivo, por lo que el juez está obligado a imponer la pena fija, en ausencia de atenuantes o agravantes.

El límite a la discreción del juez en la imposición de penas lo impone el propio Código Penal de 1974 en su Parte

General. Así, el artículo 58 de ese cuerpo de ley establece:

> Cuando el tribunal condenare a pena de reclusión dictará una sentencia determinada que tendrá término específico de duración. **En los casos de delito grave se impondrá el término fijo establecido por ley para el delito.** De existir circunstancias agravantes o atenuantes, deberá aumentar o disminuir la pena fija dentro de los límites establecidos en la ley para el delito. En estos casos el término de reclusión a imponerse también será fijo.
>
> Art. 58 del Código Penal de 1974, 33 L.P.R.A. sec. 3282. (Énfasis suplido).

Según dicho artículo, los jueces al momento de imponer sentencia están limitados a aplicar la pena fija establecida en los delitos graves, en ausencia de atenuantes y agravantes. La determinación de la existencia de circunstancias agravantes o atenuantes es la llave que permite a los jueces desviarse de la pena fija establecida y le concede discreción para imponer cualquier pena que entiendan pertinente, dentro de los límites que el propio delito establece. Sin dicha determinación, no obstante, el juez está impedido de imponer una pena mayor o menor de la fija establecida.[4]

---

[4] A pesar de que el delito de homicidio involuntario es clasificado como menos grave, le es aplicable el artículo 58 por la pena ser de delito grave. En este sentido, dicho delito es distinto a los demás delitos menos graves estatuidos en el Código para los cuales, luego de las enmiendas de 1980, la pena continuó siendo una pena de reclusión no mayor de seis (6) meses, o multa no mayor de quinientos (500) dólares. La pena del delito de homicidio involuntario fue enmendada para atemperarla a la Ley de Sentencias Determinadas y por esto el delito de homicidio involuntario tiene una pena fija, al igual que todos los delitos graves. *Véase* las Enmiendas Concordantes de la Ley de Sentencia Determinada, Ley 101 de 4 de junio de 1980.

Al examinar la intención legislativa del artículo 58 del Código Penal de 1974, encontramos que ésta apoya la interpretación que realizamos de su texto. Dicho artículo es producto de la Ley de Sentencias Determinadas, Ley 100 de junio 4 de 1980, 34 L.P.R.A. sec. 1044. Según la exposición de motivos de la referida ley, la antigua Ley de Sentencias Indeterminadas propiciaba "la disparidad en las sentencias y no ofrecía certeza en cuanto a las penas a imponerse por los delitos cometidos". Por lo tanto, la Ley de Sentencias Determinadas tenía el propósito de que las sentencias tuvieran "un mayor grado de certeza para que operen como disuasivo de futura conducta criminal por parte de los delincuentes potenciales y propicien uniformidad de manera que cada delito se castigue de acuerdo con su gravedad".

De manera que uno de los propósitos de la aprobación de la Ley de Sentencias Determinadas, además de proveer certeza en las sentencias impuestas, fue el limitar la discreción de los jueces al aplicar las penas establecidas. El antiguo sistema de sentencias indeterminadas propiciaba la disparidad, toda vez que ante hechos similares, distintos jueces aplicaban penas dispares, por lo que la administración de la justicia variaba intolerablemente de juez a juez. Así pues, la Ley de Sentencias Determinadas vino a atender dicha anomalía, estableciendo penas fijas para cada uno de los delitos graves, limitando así la discreción de los jueces de instancia.

Por tanto, el texto del artículo 58 del Código Penal, la letra de cada uno de los delitos graves estatuidos en dicho Código, y la intención legislativa de la Ley de Sentencias Determinadas apoyan la conclusión de que los jueces de instancia bajo el sistema del Código Penal de 1974 carecen de discreción para imponer cualquier pena dentro del intervalo establecido en cada delito.

Al analizar el sistema de imposición de penas del Código Penal de 1974 a la luz de la jurisprudencia federal antes discutida, debemos concluir que nuestro sistema no es tan distinto al sistema establecido por California, el cual fue declarado inconstitucional, en su aplicación, en *Cunningham*. Cierto es que aquel sistema, distinto al nuestro, es de triadas, es decir, que son posibles sólo tres sentencias: la intermedia, la mínima o la máxima. Sin embargo, lo determinante para el análisis de *Apprendi* no es si el sistema es de triadas o no, sino precisar si el juez tiene discreción para imponer cualquier pena a través del intervalo o viene obligado a imponer la pena fija establecida para el delito, en ausencia de atenuantes o agravantes. En California, al igual que en Puerto Rico, el juez viene obligado a imponer la pena fija intermedia, salvo que haga una determinación de atenuantes o agravantes. *Apprendi* y los casos subsiguientes aplican para prohibir que sea el juez quien agrave la pena más allá del límite estatutario al determinar por sí mismo los agravantes, sino que obliga a que éstos sean determinados por el jurado más allá de duda razonable.

Aceptada la limitada discreción de nuestros jueces en la imposición de penas bajo el Código Penal de 1974, debemos determinar la solución adecuada para nuestro sistema, tomando en consideración las dos vías que el Tribunal Supremo ofreció a los estados en *Cunningham* para cumplir con la norma de *Apprendi* y poder considerar agravantes al momento de imponer la pena correspondiente en casos ventilados ante jurado. A la luz del texto del Código Penal de 1974 y de la intención legislativa de la Ley de Sentencias Determinadas, la creación de un sistema de imposición de penas en el cual el juez tenga total discreción para imponer la pena que entienda correspondiente, independientemente de la determinación de agravantes o atenuantes, es tarea de la Asamblea Legislativa y no le corresponde a este Tribunal. Interpretar que el artículo 58 del Código Penal de 1974 y el texto de cada uno de los delitos que establecen penas fijas le conceden discreción total a los jueces para imponer cualquier pena a través del intervalo no sólo vulneraría el claro texto de la ley, sino que desvirtuaría también la intención legislativa plasmada en la Exposición de Motivos de la Ley de Sentencias Determinadas. Dicha interpretación, además, sería un claro acto de legislación judicial en violación a los más fundamentales preceptos de nuestra Constitución y la doctrina de separación de poderes que ésta promulga.

De modo que, la única solución que podemos adoptar cónsona con el sistema de sentencia determinada del Código

Penal de 1974 y con el derecho a juicio por jurado garantizado por la Enmienda Sexta es someter los agravantes al jurado y que éstos sean probados más allá de duda razonable. Por lo antes expuesto, resolvemos que en casos celebrados ante jurado bajo las disposiciones del Código Penal de 1974, los agravantes de la pena deben ser sometidos ante esa institución y ser probados más allá de duda razonable, salvo que sean aceptados por el acusado.[5] La solución que acogemos mantiene la esencia de nuestro sistema de imposición de penas de conceder una limitada discreción a los jueces de instancia al dictar sentencia, respetando igualmente el derecho a juicio por jurado de los acusados.[6]

Las Reglas de Procedimiento Criminal vigentes no contemplan la norma que hoy adoptamos, pero tampoco la impiden. Es nuestra función establecer el procedimiento que deberá seguirse en casos ventilados ante jurado. En casos en que los agravantes surjan de la prueba admisible presentada, el Ministerio Público podrá solicitar al Tribunal que éstos se le sometan al jurado en conjunto con

---

[5] Esta norma no aplica a la imposición de penas en grado de reincidencia. La reincidencia siempre debe ser alegada en la acusación, excepto que sea aceptada por el acusado, pero como exigencia del debido proceso de ley, no porque el derecho a juicio por jurado de la Enmienda Sexta así lo requiera. En ese sentido, *véase Pueblo v. Montero Luciano*, res. 23 de octubre de 2006, 2006 TSPR 158; 169 D.P.R. ____ (2006).

[6] Aun cuando no estamos ante un caso que se haya ventilado bajo las disposiciones del Código Penal de 2004, los principios constitucionales esbozados por el Tribunal Supremo de los Estados Unidos, reconocidos en esta Opinión, son igualmente aplicables a las disposiciones de dicho Código.

la determinación de culpabilidad o inocencia. En caso de que el jurado emita un veredicto de culpabilidad, deberá determinar igualmente si encontró probados más allá de duda razonable los agravantes imputados.[7]

Por el contrario, si es necesario presentar prueba adicional a la requerida para establecer la comisión del delito que no sería admisible durante el juicio o si el juez considera que se le causaría un perjuicio indebido al acusado al someter los agravantes antes de rendirse el veredicto, entonces el procedimiento a seguir será similar al que se lleva a cabo actualmente al amparo de las Reglas de Procedimiento Criminal. Según las reglas 162.4 y 171 de Procedimiento Criminal tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. *Véase* Reglas 162.4 y 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 162.4 & 171. El Ministerio Público podrá hacer uso de las vistas que conceden dichas reglas para presentar prueba sobre los agravantes que estime pertinentes imputar. El jurado, en esos casos, no sería disuelto inmediatamente luego de emitirse el veredicto, sino que tendrían que realizar la

---

[7] En estos casos, el juez que presida los procedimientos deberá emitir una instrucción al jurado a los efectos de que deberán, en primera instancia, determinar si el acusado es culpable o no culpable. Luego, de llegar a un veredicto de culpabilidad, deberán considerar si, a base de la prueba presentada para probar la comisión del delito, se probaron más allá de duda razonable los agravantes imputados. Del jurado contestar en la afirmativa, el juez deberá tomar en consideración dicha determinación al momento de imponer sentencia.

determinación de los agravantes más allá de duda razonable a base de la prueba desfilada en el juicio o a base de prueba adicional que el Ministerio Público presente en dicha vista. De los agravantes no ser probados más allá de duda razonable por el jurado, el juez estará obligado a imponer la pena fija, salvo que considere probadas circunstancias atenuantes que le permitan conceder una pena menor.[8]

Por último, debe recordarse que por ser la norma que establecemos en este momento de carácter constitucional aplicable a los procesos penales, tiene efecto retroactivo a todos aquellos casos que no hayan advenido finales y firmes al día de hoy. *Pueblo v. González Cardona*, 153 D.P.R. 765, 772 (2001); *Griffith v. Kentucky*, 479 U.S. 314 (1987). En casos en los cuales el convicto alegue que su sentencia es inconstitucional a la luz de la norma adoptada, y así sea determinado por el tribunal, éste deberá ser re-sentenciado al término fijo que establezca el

---

[8] No existe exigencia constitucional de que los atenuantes sean dirimidos por un jurado, pues la determinación de un atenuante por parte del juez no expone al acusado a una privación mayor de libertad que la determinación de culpabilidad original rendida por el jurado. En *Apprendi*, el Tribunal Supremo lo expresó de la siguiente manera: "[i]f facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the Judge imposing upon the defendant greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden of proof requirements are thus absent from such a scheme." *Apprendi v. New Jersey*, 530 U.S. 466 esc. 16 (2000).

delito correspondiente. De ser el interés del Ministerio Público en el proceso de re-sentencia que se imponga una pena con agravantes, será necesario que el foro de instancia celebre una vista para estos fines ante un jurado, y que éstos sean probados más allá de duda razonable.[9]

IV.

En este caso, el Sr. Santana Vélez fue encontrado culpable del delito de homicidio involuntario. Fue sentenciado a una pena de reclusión de tres (3) años, bajo el beneficio de sentencia suspendida, aun cuando el delito de homicidio involuntario tiene una pena fija de un (1) año. Los agravantes no fueron aceptados por el acusado ni presentados ante el jurado, por lo que dicho cuerpo no hizo determinación alguna con relación a éstos.

La sentencia impuesta al Sr. Santana Vélez es inconstitucional a la luz de la norma adoptada en *Apprendi* y su jurisprudencia interpretativa. La pena máxima que podía imponer el juez con el sólo veredicto del jurado era la pena fija de un (1) año establecida en el artículo 86 del Código Penal de 1974. Para imponer una pena mayor a

---

[9] No existe problema de doble exposición con la celebración de un proceso de re-sentencia frente a otro jurado. En dicho proceso no se juzgará nuevamente a la persona, pues ya un jurado la declaró culpable, sino que se corregirá una sentencia inconstitucional. Igual, consideramos que cualquier reclamo de doble exposición que pueda levantar el acusado, se entiende renunciado por éste al solicitar la revisión de la sentencia. Véase E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Editorial Forum, 1993, Vol. II, sec. 16.3, págs. 395-408. A manera persuasiva, *véase Smylie v. Indiana*, 823 N.E. 2d 679 (2005), en el cual se siguió idéntico procedimiento.

esa, se debieron probar más allá de duda razonable y ante el jurado las circunstancias agravantes que el Ministerio Público quisiera imputar.

Por los fundamentos antes expresados, procede la revocación de la sentencia dictada por el Tribunal de Apelaciones e igualmente la sentencia impuesta por el foro de instancia. Se ordena la devolución del caso a dicho foro para que se re-sentencie al Sr. Santana Vélez de forma compatible con lo expuesto en esta Opinión.

Se dictará sentencia de conformidad.


                                    Anabelle Rodríguez Rodríguez
                                            Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

Jaime Santana Vélez

    Peticionario

CC-2007-65

SENTENCIA

San Juan, Puerto Rico, a 13 de octubre de 2009

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia revocando la sentencia dictada por el Tribunal de Apelaciones e igualmente la sentencia impuesta por el foro de instancia. Se ordena la devolución del caso a dicho foro para que se re-sentencie al Sr. Santana Vélez de forma compatible con lo expuesto en esta Opinión.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Martínez Torres emite una Opinión de conformidad. El Juez Asociado señor Rivera Pérez emite una Opinión disidente a la que se une la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo.

Juliana Mosquera Soler
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
          Recurrido

              v.
                                    CC-2007-65

     Jaime Santana Vélez
          Peticionario

Opinión de conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 13 de octubre de 2009.

El peticionario Jaime Santana Vélez arguye que la sentencia que le fue impuesta viola su derecho a juicio por jurado al amparo de la Sexta Enmienda a la Constitución federal y su jurisprudencia interpretativa: Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005); Cunningham v. California, 549 U.S. 270 (2007).

El Tribunal sostiene hoy la constitucionalidad de las Reglas 162.4 y 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 162.4 y 171, ya que éstas no impiden la intervención del jurado en la

imposición de agravantes, según lo requiere la Sexta Enmienda. Coincido plenamente con el análisis del Tribunal pero me parece importante resaltar varios aspectos que justifican el dictamen que hoy emitimos.

                                    I

El Tribunal Supremo federal manifestó en Downes v. Bidwell, 182 U.S. 244 (1901), que luego del cambio de soberanía en las postrimerías del Siglo XIX, Puerto Rico no fue incorporado a los Estados Unidos, según ese término se utiliza en la Constitución federal. Ese caso fue el inicio de una serie de jurisprudencia federal conocida como los Casos Insulares. En esos casos, el Tribunal Supremo decidió que el Congreso de los Estados Unidos, al legislar para Puerto Rico, no tenía las mismas limitaciones que la Constitución federal le impone frente a los estados.

En Balzac v. Porto Rico, 258 U.S. 298 (1922), se expresó que la Ley Orgánica de 2 de marzo de 1917, mejor conocida como Ley Jones, no tuvo el efecto de incorporar a Puerto Rico la cláusula de juicio por jurado de la Sexta Enmienda. Por voz de su Juez Presidente Taft, el Tribunal Supremo expresó sobre las disposiciones constitucionales que *"it is just as clearly settled that they do not apply to territory belonging to the United States which has not been incorporated into the Union"*. Id. a las págs. 304-305.

En ese caso se determinó que la Ley Orgánica de Puerto Rico no era suficiente para incorporar a la Isla el derecho a juicio por jurado dispuesto en la Sexta Enmienda, pues ese no fue el

propósito del Congreso. Para esa incorporación era necesaria la declaración expresa o una fuerte intención de parte del Congreso. Id. a la pág. 306.

Además, los Casos Insulares resuelven que sólo los "derechos fundamentales" de la Constitución de los Estados Unidos son de aplicación en Puerto Rico. Id. a las págs. 312-313. Como el derecho a juicio por jurado en casos criminales no se consideraba fundamental a principios del Siglo XX, no se extendió a Puerto Rico.

Mucho ha transcurrido desde entonces. El 3 de julio de 1950, el Congreso aprobó la Ley Pública Núm. 600, P.L. 81-600, 64 Stat. 319 (1950), 1 L.P.R.A., 48 U.S.C.A. sec. 731b y ss. Al amparo de esa ley, el Pueblo de Puerto Rico aprobó la Constitución del Estado Libre Asociado, que entró en vigor el 25 de julio de 1952, luego de recibir la aprobación congresional mediante la Ley Pública Núm. 447, P.L. 82-447, 66 Stat. 327 (1952), 1 L.P.R.A., 48 U.S.C.A. sec. 731d nota.[10] De ese modo, se estableció una relación que para aquel entonces era única (*unique*) en el derecho estadounidense, ya que Puerto Rico se convirtió en el primer territorio gobernado por una *carta magna* redactada por sus propios habitantes. Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 499

---

[10] Sin embargo, en dicha Resolución, el Congreso de los Estados Unidos no aprobó la Sección 20 del Artículo II. Además, condicionó la vigencia de la Sección 5 del Artículo II y la Sección 3 del Artículo VII a que se adoptara mediante enmiendas un texto en específico. Dichas enmiendas no se adoptaron mediante referendo como el resto de la Constitución, sino mediante la Resolución Núm. 34 de la Convención Constituyente, de 10 de julio de 1952, es decir, quince días antes de la vigencia de la *carta magna*.

(1988); <u>Calero Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 671-674 (1974).[11]

A partir de entonces, el Tribunal Supremo federal ha sido consistente en reconocer que el propósito congresional tras la Ley Pública Núm. 600 es que se le reconozcan a Puerto Rico la autoridad y facultades internas similares a las de un estado de la Unión. <u>Puerto Rico v. Branstad</u>, 483 U.S. 219, 229-230 (1987); <u>Rodríguez v. Popular Democratic Party</u>, 457 U.S. 1, 8 (1982); <u>Examining Bd. v. Flores De Otero</u>, 426 U.S. 572, 594 (1976); <u>Calero Toledo v. Pearson Yacht Leasing Co.</u>, <u>supra</u> a la pág. 673.

Lo anterior significa, como señaló el decano David M. Helfeld, que Puerto Rico tiene que observar los mismos límites a su autonomía interna que un estado de la Unión.

> *In the field of individual rights, if a state can do it constitutionally, Puerto Rico can do it, and vice versa. This principle would treat Puerto Rico, by analogy, as equivalent to a state for the purpose of defining the scope of individual*

---

[11] La situación de Puerto Rico ya no es única. Con posterioridad al caso de Puerto Rico, otras áreas insulares de los Estados Unidos siguieron el ejemplo de Puerto Rico y redactaron sus propias constituciones, para regir sus asuntos internos. Así, la Samoa Americana adoptó una Constitución redactada localmente, que el Secretario del Interior aprobó en 1960. El Congreso no intervino ya que nunca aprobó una ley orgánica para ese territorio y dejó su organización en manos de la Rama Ejecutiva del Gobierno federal. Pub. Res. 89, 70th Cong.; 45 Stat. 1253 (1929), 48 U.S.C.A. sec. 1661(c). No obstante, la Ley Pública Núm. 213 de 8 de diciembre de 1983, 97 Stat. 1462, 48 U.S.C.A. sec. 1662a, estableció que cualquier enmienda o modificación a la Constitución de la Samoa Americana podrá hacerse solamente mediante ley del Congreso de los Estados Unidos.

Por otra parte, las Islas Marianas del Norte aprobaron una Constitución local en 1978, por acuerdo (*covenant*) con el Gobierno federal. Conforme a dicho acuerdo político, se declaró que dicho territorio es un *"self-governing commonwealth… in political union with and under the sovereignty of the United States of America…." Marianas Covenant*, Sec. 101.

> *constitutional rights vis-à-vis Puerto Rico governmental actions....*
>      *This principle has been followed equally in reverse: if a state cannot do it constitutionally, neither can Puerto Rico....* D.M. Helfeld, <u>Applicability of the United States Constitution and Federal Laws to the Commonwealth of Puerto Rico</u>, 110 F.R.D. 449, 457 (1985).

Ante esa realidad moderna, la pregunta obligada es si <u>Balzac</u> todavía controla la cuestión de la aplicabilidad en Puerto Rico de la cláusula de juicio por jurado de la Sexta Enmienda de la Constitución federal.

En <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968), el Tribunal Supremo expresó que el derecho a juicio por jurado es un derecho fundamental para la concepción americana de justicia. Al clasificar el derecho a un juicio por jurado como fundamental, el Tribunal Supremo Federal se apartó de su decisión en <u>Balzac</u>, <u>supra</u>. Tratándose de un derecho reconocido como fundamental, se extiende a los habitantes de Puerto Rico, según la doctrina de los Casos Insulares. <u>Dorr v. United States</u>, 195 U.S. 138, 148 (1904). Véanse, además, <u>Posadas de Puerto Rico Associates v. Tourism Co. of P. R.</u>, 478 U.S. 328, 331 n. 1 (1986); <u>Rodríguez v. Popular Democratic Party</u>, <u>supra</u> a la pág. 7; <u>Torres v. Puerto Rico</u>, 442 U.S. 465, 469-470 (1979); <u>Examining Bd. v. Flores De Otero</u>, supra, pág. 300 n. 30. Por tanto, es ineludible concluir que la cláusula de juicio por jurado de la Sexta Enmienda de la Constitución federal aplica a Puerto Rico. "En cuanto al carácter no fundamental del derecho constitucional federal a juicio por jurado, <u>Balzac</u> probablemente ya no es buena ley." J.J. Álvarez González, <u>Derecho constitucional de</u>

<u>Puerto Rico y relaciones constitucionales con los Estados</u>

<u>Unidos</u>, Bogotá, Editorial Temis S.A., 2009, pág. 428.

Consistente con esto, en <u>Pueblo v. Laureano</u>, 115 D.P.R. 447,

449 n. 6 (1984), invocamos a <u>Duncan</u> al resolver que un

acusado de cometer ciertas infracciones a la Ley de Armas

clasificadas como delitos graves tenía derecho a un juicio

por jurado.

Coincido con el decano Helfeld en que no reconocer la

aplicación en Puerto Rico del derecho constitucional federal a

juicio por jurado en casos criminales *"would require a*

*justification, explaining why Puerto Rico could deny a*

*fundamental right which no state can deny."* Helfeld, <u>supra</u> a la

pág. 458. Insistir en lo resuelto en <u>Balzac</u> luego del precedente

de <u>Duncan</u>, resultaría en que los ciudadanos americanos en Puerto

Rico tendrían menos derechos fundamentales que los que

disfrutarían si estuvieran en cualquiera de los estados de la

Unión. Helfeld, <u>supra</u> a la pág. 458. Eso chocaría de frente con

la disposición de privilegios e inmunidades de la Ley de

Relaciones Federales, Art. 2 de la Ley de 2 de marzo de 1917, 61

Stat. 772, 1 L.P.R.A., 48 U.S.C.A. sec. 737.[12]

Sostener la vigencia de <u>Balzac</u> después de <u>Duncan</u> sería

negar la igualdad de derechos fundamentales de los ciudadanos

americanos en Puerto Rico, lo que sería contrario al propósito

congresional de que se trate a Puerto Rico de forma análoga a un

---

[12] "§ 2. [Privilegios e inmunidades]

Los derechos, privilegios e inmunidades de los ciudadanos de los Estados Unidos se respetarán en Puerto Rico hasta el mismo grado que si Puerto Rico fuera un Estado de la Unión y sujeto a las disposiciones del inciso 1 de la sec. 2 del Art. IV de la Constitución de los Estados Unidos."

estado federado y a nuestro deber constitucional de garantizar la justicia e igualdad a todos, al reafirmar "la lealtad a los postulados de la Constitución Federal…". Preámbulo de la Constitución de Puerto Rico, 1 L.P.R.A.

Establecida la aplicabilidad de la cláusula de juicio por jurado de la Sexta Enmienda, hay que analizar entonces si la actuación judicial que aquí revisamos es consistente con esta garantía constitucional.

## II

El Tribunal Supremo de los Estados Unidos, en Apprendi v. New Jersey, supra, y su progenie, delimitó la forma en que un estado puede establecer su sistema de imposición de penas sin menoscabar el derecho a un juicio por jurado. Esta jurisprudencia sostiene que con la excepción de una convicción previa, los hechos que incrementen la sentencia sobre el máximo estatutario tienen que ser admitidos por el acusado o probados más allá de duda razonable ante un jurado. La normativa esbozada ha suscitado gran debate al evaluar el impacto de estas decisiones federales en los sistemas penales estatales.

En Apprendi, el acusado se declaró culpable de tres cargos de segundo grado: dos por poseer un arma de fuego para uso ilegal y otro de explosivos. Un estatuto del estado de New Jersey (la ley contra crímenes de odios) autorizaba extender el término de prisión fijado en ley. Un juez podía hacer esta adición a la pena, por preponderancia de la prueba, si el delito se cometió con el propósito de intimidar por razón de raza, color, género, incapacidad, religión, orientación sexual u origen étnico. Esto es, los hechos que fundamentaban la pena

agravada, a saber, la comisión del delito con el propósito de intimidar a estos grupos, podían ser determinados por el juez sin participación del jurado.

En este caso, el juez determinó que los delitos fueron cometidos para intimidar y que éstos fueron motivados por discrimen racial. Ante este hecho, el juez impuso una condena extendida de 12 años. Esa condena conllevaba la determinación de agravantes, pues con la mera convicción por el delito base (utilizar un arma de fuego para uso ilegal) el acusado se exponía a una sentencia de 5 a 10 años (intervalo a ser utilizado por el juez), no de 12 años.

El Tribunal Supremo de los Estados Unidos reconoció que existe un derecho a juicio por jurado para todo factor, con excepción de una previa convicción, que incrementa la pena de un crimen por encima del máximo estatutario como en este caso. En aquella ocasión, el sistema utilizado para fijar la pena agravada contra el acusado fue inconstitucional porque restringió su derecho a juicio por jurado. Ya que el delito por el que se declaró culpable el acusado (utilizar un arma de fuego con propósitos ilegales) establecía una pena de 5 a 10 años, la imposición de una pena de 12 años basada en hechos agravantes era inconstitucional. Los hechos que agravaban la pena (el propósito de intimidar) no fueron probados ante un jurado ni admitidos por el acusado. El acusado se declaró culpable (admitió los hechos) por la utilización del arma de forma ilegal y no admitió que tuviera el propósito de intimidar (cuestión que determinó el juez de forma inconstitucional). Para este factor (un hecho) que aumentó la pena por encima del máximo estatutario

(10 años) era necesario que el acusado admitiera el hecho o que éste fuera probado ante un jurado más allá de duda razonable.

El razonamiento del Tribunal Supremo federal se basó en la concepción tradicional de la función del jurado en relación con la imposición de la pena. Dicho Tribunal sostuvo que avalar el sistema de imposición de penas impugnado sería contrario a la Constitución de los Estados Unidos. Desde entonces, muchos estados han tenido que modificar sus estatutos penales para atemperarlos a la norma esbozada. La norma establecida por el más alto foro federal, lejos de impedir un sistema de agravación de penas, establece los derechos de todo acusado frente a la fijación de una pena agravada.

En _Blakely v. Washington_, _supra_, el Tribunal Supremo federal aplicó nuevamente la doctrina de _Apprendi_ al sistema de sentencias de Washington. Blakely secuestró a su esposa. Se declaró culpable por delitos de secuestro, violencia doméstica y armas. El estatuto penal establecía para el delito de secuestro con un arma de fuego una sentencia de 49 a 53 meses de cárcel. El juez, amparado en una disposición legal que permite una sentencia mayor si hay razones sustanciales para ello, condenó a Blakely a cumplir 90 meses de prisión. Como razón sustancial, el juez determinó el hecho de que el acusado actuó con crueldad deliberada. Al igual que _Apprendi_, se trataba de una pena agravada fundamentada en una determinación de hechos que el acusado no aceptó ni fue probada ante un jurado más allá de duda razonable. En _Blakely_, el acusado admitió solamente los hechos que configuraban el delito de secuestro en segundo grado.

El Tribunal Supremo de los Estados Unidos decidió que el máximo estatutario es la pena que el juez puede imponer por los hechos reflejados en el veredicto del jurado o admitidos por el acusado. Si la imposición de una pena mayor requiere que se determinen hechos adicionales, esa pena está por encima del máximo estatutario. El Tribunal insistió en que toda determinación de hechos que incremente el máximo estatutario tiene que ser admitida por el acusado o probada ante un jurado más allá de duda razonable. A estos efectos, se expresó:

> *[T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury´s verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment,"… and the judge exceeds his proper authority".* Id. a las págs. 303-304 (cita omitida).

Añadió el máximo Tribunal:

> *Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact".* Id. a la pág. 305.

Esta decisión reiteró la norma esbozada en Apprendi: Es necesaria la admisión del acusado o la determinación de un jurado para imponer una pena agravada que se fundamenta en hechos adicionales que agravan la pena. Por lo tanto, para imponer una pena mayor a la establecida para el delito (máximo estatutario) cuando se requiere la determinación de hechos adicionales a los del delito base, no se le puede privar al acusado de su derecho a juicio por jurado.

Ahora bien, existe una excepción cuando el hecho agravante es reincidencia. Esta excepción se fundamenta en que las convicciones previas se establecieron en procedimientos anteriores que garantizaron los derechos del acusado, como lo son el derecho a juico por jurado, la presunción de inocencia y la notificación adecuada. Además, la reincidencia es tradicionalmente un factor utilizado por los tribunales para incrementar la sentencia. Véanse, Apprendi v. New Jersey, supra; Jones v. United States, 526 U.S. 227 (1999); Almendarez-Torres v. United States, 523 U.S. 224 (1998). Aun así, la reincidencia siempre tiene que alegarse en la acusación, por exigencia del debido proceso de ley (Const. P.R., Art. II, Sec. 11, 1 L.P.R.A.) y no del derecho a juicio por jurado de la Sexta Enmienda. Véase, Pueblo v. Montero Luciano, Opinión de 23 de octubre de 2006, 2006 T.S.P.R. 158, 2006 J.T.S. 167, 169 D.P.R. ___ (2006).

Aplicada la norma de Apprendi al caso de Blakely, el Tribunal Supremo Federal concluyó que el sistema de imposición de penas utilizado contra el acusado era inconstitucional. La invalidez de este sistema se debió a que se le permitió al juez determinar por sí solo unos hechos que agravaron la pena por encima de la pena máxima sin agravantes. El acusado admitió un delito que le exponía a una condena de 49 a 53 meses. Como la determinación del hecho agravante (maldad deliberada) no fue admitida por el acusado ni probada más allá de duda razonable frente a un jurado, esta pena agravada de 90 meses no podía sostenerse. Se resolvió de nuevo que debido a que el acusado tiene un derecho a juicio por jurado, los hechos que aumentan

una pena sobre el límite establecido en ley tienen que ser admitidos por el acusado o probados más allá de duda razonable.

En United States v. Booker, supra, el Tribunal Supremo de los Estados Unidos tuvo la oportunidad de examinar las guías federales para sentenciar. En este caso, se reafirmó la norma de *Apprendi* para establecer lo siguiente:

> *Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.* Id. a la pág. 756.

Las guías federales para sentenciar se validaron por la interpretación que se les dio. Las guías se declararon constitucionales al disponer que el juez está autorizado a imponer una pena dentro del intervalo fijado para el delito sin tener que hacer una determinación adicional de la existencia de agravantes. Esto es muy distinto al sistema invalidado en Apprendi, donde para imponer una pena mayor a la autorizada, el juez tenía que hacer una determinación de hechos no admitidos por el acusado ni probados ante un jurado.

En Cunningham v. California, supra, el Tribunal Supremo examinó las implicaciones de las Enmiendas VI y XIV sobre el sistema de imposición de penas de California. Bajo la ley de California, Cunningham podía ser sentenciado a una pena fija de seis, doce o dieciséis años (sentencias determinadas), según las circunstancias agravantes o atenuantes que se probaren. Esta ley [*determinate sentencing law (DSL*)] sustituyó el régimen de sentencias indeterminadas que operó en California por más de 60 años. Según esta nueva ley de imposición de penas, el juez debía

imponer a Cunningham una sentencia de 12 años, salvo que determinara uno o más factores agravantes o atenuantes. De determinar atenuantes la pena fija se reducía a seis años de prisión pero de probarse agravantes la pena sería de dieciséis años de cárcel.

Tras una vista posterior al juicio, el juez encontró seis circunstancias agravantes, entre las cuales estaban la vulnerabilidad de la víctima y el serio peligro a la comunidad que mostraba la conducta violenta del acusado. Por esa razón, el juez le impuso a Cunningham una pena agravada de dieciséis años. El Tribunal Supremo federal invalidó este sistema bajo el siguiente razonamiento:

> *If the jury´s verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.* Id. a la pág. 290.

Añadió el más alto foro:

> *[O]ur decisions from Apprendi to Booker point to the middle term specified in California´s statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent.* Id. a la pág. 293.

Esta jurisprudencia permite a los estados mantener sistemas para determinar sentencias, pero éstos deben estar en armonía con el derecho a juicio por jurado consagrado en la Constitución federal. Se viola la Sexta Enmienda en la medida en que se le priva a un acusado el derecho a un juicio por jurado para determinar los hechos que agravan su pena. La determinación de hechos que sostiene una pena agravada tiene que ser adjudicada

por el jurado mediante prueba durante el juicio o en vista separada, a menos que la ley le otorgue al juez una genuina discreción con un margen de penas disponible ante un veredicto de culpabilidad sin necesidad de determinar hechos adicionales. Id. a la pág. 294.

En estas decisiones, el Tribunal Supremo de Estados Unidos ha establecido claramente la validez de sistemas para sentenciar, siempre que no contravengan el derecho a un juicio por jurado. En Cunningham v. California, id. a la pág. 294 n. 17, se mencionan con aprobación las reformas legislativas de algunos estados para cumplir con las exigencias de Apprendi y su progenie. Al examinar algunas de estas leyes estatales, se pueden apreciar sistemas para determinar sentencias por razón de circunstancias agravantes similares al de Puerto Rico (un sistema de sentencias determinadas que establece un intervalo de tiempo de castigo dentro del cual se selecciona una pena fija). Alaska Stat. §§ 12.55.125(c) y 12.55.155(f) (2004); Ariz. Rev. Stat. Ann. § 13-702.01 (West Supp. 2006). Ahora bien, estos sistemas tienen que funcionar conforme con la norma federal que requiere, salvo las excepciones antes mencionadas, que los hechos que dan base para la pena agravada sean probados ante un jurado más allá de duda razonable.

No existe problema de inconstitucionalidad en un sistema para imponer sentencias determinadas que durante o después del juicio delega al jurado la determinación de los hechos que agravan la pena sobre el máximo estatutario; o que permite al juez escoger una pena dentro de un intervalo sin tener que hacer una determinación de hechos agravantes.

III-A

En síntesis, la imposición de una pena agravada por encima del máximo estatutario tiene que basarse en una de las cuatro alternativas reconocidas por la jurisprudencia federal, a saber, (1) que el acusado admita los hechos que agravan la pena; (2) que sea el jurado quien determine esos hechos más allá de duda razonable; (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia; o (4) bajo la excepción de agravantes por convicción previa. Una vez determinados estos hechos conforme a la Sexta Enmienda, el juez tiene discreción para imponer la pena agravada o para seleccionar la pena dentro del intervalo fijado en ley.

La pena agravada impuesta al Sr. Jaime Santana Vélez violó la cláusula constitucional de juicio por jurado. El peticionario fue acusado por el delito de homicidio involuntario bajo el Código Penal de 1974. En su Artículo 86 se provee para este delito una pena de reclusión de "un término fijo de un (1) año". Art. 86, 33 L.P.R.A. sec. 4005. La pena podía ser aumentada o disminuida de mediar circunstancias agravantes o atenuantes. Ibíd. De mediar circunstancias agravantes, la pena podía ser aumentada a tres (3) años.[13] Así pues, una convicción por el delito de homicidio involuntario

_____

[13] "Homicidio Involuntario

. . . . . . . .

Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un día…". 33 L.P.R.A. sec. 4005.

sin más, autoriza al juez sólo a imponer una pena de un (1) año, no más. La imposición de una pena mayor entre (1) año y un (1) día, y tres (3) años, depende de una determinación ulterior, a saber, los hechos agravantes.

Al igual que el Artículo 74 del Código Penal de 2004, 33 L.P.R.A. sec. 4702, el Artículo 58 del Código Penal de 1974, 33 L.P.R.A. sec. 3282, permitía al juez imponer una pena mayor en los casos en que se determinaren circunstancias agravantes. Esta adjudicación de hechos era mandatoria para imponer la pena mayor por agravantes y no constituía una mera guía discrecional. El juez no contaba con un intervalo dentro del cual seleccionar la pena. Las disposiciones mencionadas no le otorgaron al juez la facultad para seleccionar la pena agravada dentro del intervalo provisto sino que era necesaria la determinación de otros hechos. Tanto es así, que para sostener la pena agravada contra el señor Santana Vélez en este caso, el Tribunal de Apelaciones tuvo que determinar que el acusado intervino indebidamente con un testigo y que conducía con negligencia crasa. Estos hechos aumentaron la pena por encima del máximo estatutario de un (1) año.

Debido a que para la pena que le fue impuesta al acusado (3 años) era necesaria la determinación de hechos agravantes, esto se debió hacer por medio de alguna de las formas antes indicadas. Para imponer una pena mayor a la fija establecida por ley, era necesario determinar algunos de los hechos descritos en la Regla 171 de Procedimiento Criminal, supra R. 171 (antes de ser enmendada para atemperarla al Código Penal de

2004).[14] En ausencia de esta determinación adicional de hechos, el juez tenía que imponer la pena fija de un (1) año.[15] No tenía discreción para seleccionar una pena dentro del intervalo de seis (6) meses y tres (3) años, en ausencia de una determinación de hechos agravantes o atenuantes. En ese sentido, el caso es indistinguible de <u>Cunningham v. California</u>, <u>supra</u>.

Para dictar una sentencia agravada al amparo de la Regla 171 es necesario hacer una adjudicación de hechos. Esto es, hay

---

[14] "Regla 171. Sentencia; Prueba sobre circunstancias atenuantes o agravantes

El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena.

(a) ........

(b) Se podrán considerar como circunstancias agravantes, entre otras, las siguientes:

(1) Hechos relacionados con la comisión del delito y con la persona del acusado incluyendo entre otros:

(A) El delito fue de violencia, se causó grave daño corporal, o amenaza de causarlo y se evidenciaron hechos que revelan una gran crueldad, ningún respeto humano y un rechazo a las normas de la decencia.

........

(G) El acusado amenazó a los testigos, ilegalmente evitó que los testigos asistieran a las vistas o los indujo a cometer perjurio o en cualquier otro modo obstaculizó el proceso judicial.

........

(O) La víctima del delito es una persona de sesenta (60) años de edad o más.

........" 34 L.P.R.A. Ap. II R. 171.

[15] "Sentencia Determinada

Cuando el tribunal condenare a pena de reclusión dictará una sentencia determinada que tendrá término específico de duración. En los casos de delito grave se impondrá el término fijo establecido por ley para el delito. De existir circunstancias agravantes o atenuantes, deberá aumentar o disminuir la pena fija dentro de los límites establecidos en la ley para el delito. En estos casos el término de reclusión a imponerse también será fijo." Art. 58 del Código Penal de 1974, 33 L.P.R.A. sec. 3282.

que determinar si algún hecho enumerado por la regla se encuentra presente. Como esta determinación de hechos expone al acusado a una pena mayor, es imprescindible cumplir con las exigencias del derecho a juicio por jurado. La adjudicación de los hechos que agravaron la pena impuesta al acusado por parte del Tribunal de Apelaciones y sin el peso de prueba requerido, violó su derecho bajo la Sexta Enmienda.

Para efectos de esa disposición constitucional el máximo estatutario para el delito de homicidio involuntario en este recurso es un año de reclusión (pena fija en triadas). En Apprendi era de 10 años (la pena mayor dentro del intervalo de 5 a 10 años) y en Cunningham era de 12 años (pena fija antes de imponer agravantes). Por otro lado, la ley de Washington analizada en Blakely v. Washington, supra, establecía un término máximo estatutario para cada delito. Wash. Rev. Code Ann. § 9.94A.320.

En ese estado, para exceder el margen del término provisto (una pena por encima del intervalo), el juez debía hacer una determinación de hechos con un *quántum* de prueba establecido por ley (*substantial and compelling reasons justifying an exceptional sentence*). Wash. Rev. Code Ann. § 9.94A.120. En otra disposición se establecían los factores agravantes que ilustraban al juez. Wash. Rev. Code Ann. § 9.94A.390. Estas disposiciones, al igual que en Puerto Rico, establecen el término a ser impuesto por la comisión de un delito y el proceso para determinar una pena agravada.

En fin, de lo anterior se desprende que no existe diferencia entre el sistema de triadas revisado en Cunningham

v. California, supra, el de márgenes revisado en Blakely v. Washington, supra, y el nuestro, en cuanto a la Sexta Enmienda se refiere. El estatuto de California establecía una pena fija para las sentencias agravadas o atenuadas. En Washington se establecía un margen de penas sin agravantes. Blakely v. Washington, supra. Pero al igual que en Puerto Rico, se exige que para imponer la pena agravada se determine el hecho adicional que lo justifica.

Estos sistemas requieren la presentación de prueba y una determinación sobre los hechos que incrementan la pena establecida para el delito imputado. Por exigencia de la Sexta Enmienda, esos hechos tienen que ser determinados por un jurado más allá de duda razonable o admitidos por el acusado. Por supuesto, este derecho constitucional se tiene que reconocer de igual forma al imponer una pena agravada bajo las disposiciones análogas del Código Penal de 2004. Arts. 70-74, 33 L.P.R.A. secs. 4698-4702.

La pena agravada impuesta al peticionario no satisfizo las exigencias constitucionales, pues el jurado no determinó las circunstancias agravantes más allá de duda razonable ni el acusado admitió los hechos que agravan la pena. Debido a que no se dio ninguna de las excepciones señaladas para imponer una pena agravada, era necesario que el jurado determinara los hechos agravantes más allá de duda razonable. De lo anterior se desprende que en algunas instancias se puede imponer una pena agravada como la impugnada sin la participación del jurado. Esto es permisible cuando: (1) el acusado admite los hechos que agravan la pena; (2) el acusado consiente a que el juez

determine esos hechos únicamente para propósitos de sentencia; o (3) cuando el agravante consiste en la reincidencia.

Los Artículos 58 y 86 del Código Penal del 1974, _supra_, así como las Reglas 162.4 y 171 de Procedimiento Criminal, _supra_, no impiden la aplicación de un sistema constitucional para determinar una sentencia agravada. Estas disposiciones permiten a un acusado: (1) admitir los hechos que agravarían su pena; (2) que sea un jurado quien determine más allá de duda razonable estos hechos agravantes; o (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia.

El problema que este recurso en particular presenta frente a la Sexta Enmienda tiene que ver con el proceso seguido para agravar la pena y no con las disposiciones legales señaladas. Las disposiciones legales aquí impugnadas son constitucionales, pues permiten la imposición de penas agravadas conforme a la Sexta Enmienda. La violación de la Sexta Enmienda surgió al aplicar la ley y no tiene que ver con el contenido de esta última. El ordenamiento jurídico penal en controversia es válido. Al determinar los hechos que agravaron la pena, el Tribunal de Apelaciones aplicó inconstitucionalmente las disposiciones aludidas.[16]

B

---

[16] Del mismo modo, en varios estados se ha sostenido la validez de sus estatutos bajo la norma federal, aunque se ha delimitado su aplicabilidad de conformidad con la Sexta Enmienda y la jurisprudencia federal. Véanse, _López v. State of Colorado_, 113 P.3d 713 (Co. 2005); _Smylie v. State of Indiana_, 823 N.E.2d 679 (Ind. 2005); _State of Washington v. Hughes_, 110 P.3d 192 (Wash. 2005); _State of Oregon v. Dilts_, 103 P.3d 95 (Ore. 2004).

En el futuro, cuando sea necesaria la adjudicación de los hechos agravantes por parte del jurado, y como medida profiláctica, el juez debe tener la discreción para decidir en qué etapa procesal se presenta la evidencia a estos fines. Esta norma es la más adecuada en ausencia de legislación sobre el particular. La jurisprudencia federal permite presentar dicha evidencia durante el juicio o posterior al veredicto. La razón es sencilla: no complicar los procesos en aquellos casos en que ello no se amerita.

Con los criterios establecidos en la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV R. 19, o en la Regla 403 de las nuevas Reglas de Evidencia, vigentes a partir del 1 de enero de 2010, el juez puede decidir cuándo la prueba a ser presentada al jurado antes de un veredicto puede afectar adversamente los derechos del acusado y cuándo no. Le corresponde al juez que preside el proceso hacer un análisis de las medidas necesarias para salvaguardar la justicia en los casos específicos.

Cabe señalar que mucha de la prueba que sustenta un agravante es admisible en evidencia y es presentada durante el juicio. Por ejemplo, cuando el agravante es la edad de la víctima es casi inevitable que se presente ese factor al jurado durante el juicio. En casos así, ordenar la bifurcación de los procedimientos de forma automática llevaría a la presentación de prueba acumulativa. Por eso, bajo este mismo análisis, otras jurisdicciones han reconocido la idoneidad de una regla orientada a que el juez tenga discreción para decidir si los agravantes se someterán al jurado durante el juicio o en una vista evidenciaria luego de recaer el veredicto de

culpabilidad. Véanse, Alaska Stat. § 12.55.155 (f) (2004); Kan. Stat. Ann. § 21-4718(b)(2) (2005); Minn. Stat. § 244.10, subd. 5 (2005); N.C. Gen. Stat. Ann. § 15A-1340.16(a1) (Lexis 2005); Wash. Rev. Code § 9.94A.537 (2006).

Por último, conviene aclarar el alcance de nuestra decisión a otros procesos judiciales. La norma que hoy establecemos, conforme a lo resuelto por el Tribunal Supremo federal en United States v. Booker, supra a la pág. 268, es de aplicación retroactiva a toda determinación judicial pendiente de revisión, o que no sea final y firme. En este caso, citando a Grifith v. Kentucky, 479 U.S. 314, 328 (1987), el Tribunal Supremo de Estados Unidos reiteró que *"a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases… pending on direct review or not yet final"*. Esto quiere decir que cuando se pauta una nueva norma constitucional sobre el procedimiento criminal su aplicación a casos existentes es limitada. Estas exigencias podrían ser invocadas únicamente en casos aún no resueltos o en los que todavía está disponible el mecanismo de revisión directa, porque no son finales y firmes. Pueblo v. González Cardona, 153 D.P.R. 765, 772 (2001).

Así pues, procede la devolución del caso al foro primario para resentenciar al peticionario conforme al criterio aquí expuesto. Si el Ministerio Público lo solicita, debe celebrarse una vista para establecer las circunstancias agravantes ante un jurado. La disolución del jurado que encontró al acusado culpable por el delito de homicidio involuntario no es impedimento para constituir otro jurado que juzgue los

agravantes. Ante hechos similares, igual remedio ordenó el Tribunal Supremo de Indiana en Smylie v. State of Indiana, 823 N.E.2d 679 (2005).

Corresponde al fiscal evaluar este caso y decidir, en el sano ejercicio de su discreción, si puede probar los hechos agravantes ante un jurado, más allá de duda razonable. Ahora bien, el exceso de velocidad constituye la negligencia que ya es elemento esencial del delito de homicidio voluntario. Por lo tanto, ese factor no puede considerarse como circunstancia agravante. En eso también erró el Tribunal de Apelaciones.

Tampoco se puede descartar el segundo factor agravante que identificó el Tribunal de Apelaciones: las llamadas telefónicas del peticionario para alegadamente inducir a una testigo de cargo a cometer perjurio. En todo caso, correspondería al jurado adjudicar el motivo de esas llamadas y determinar si las considera hechos agravantes de la pena impuesta. Al abrogarse esa función, el Tribunal de Apelaciones incidió.

En cambio, podría invocarse como agravante en este caso la edad de la víctima, una persona de 83 años de edad. El texto de la Regla 171(b)(1)(O) es claro: se considera agravante que la víctima tenga 60 años de edad o más. Este subinciso se añadió a la regla mediante la Ley Núm. 142 de 18 de julio de 1998. Es correcto que el propósito del legislador fue castigar con una pena mayor a aquéllos que se aprovechan de la edad mayor de la víctima. Pero no es menos cierto, en primer lugar, que cuando la letra de la ley es clara, no podemos negarnos a seguirla tan sólo porque entendamos que la aplicación contemplada no fue la intención de la Asamblea Legislativa. Art. 14 del Código Civil,

31 L.P.R.A. sec. 14; <u>Alejandro Rivera v. E.L.A.</u>, 140 D.P.R. 538 (1996).

En segundo lugar, la Exposición de Motivos de la Ley Núm. 142, <u>supra</u>, no descarta la aplicación de la Regla 171(b)(1)(O) a la situación que nos ocupa. La Asamblea Legislativa expresó un deseo de darle protección legal especial a las personas mayores de 60 años porque "nuestra sociedad ha perdido la noción de la importancia de considerar, respetar y velar por el bienestar de las personas de edad avanzada." Exposición de Motivos de la Ley Núm. 142, <u>supra</u>. Para el legislador, este grupo poblacional "no cuenta[] con la fortaleza física y los recursos necesarios para defenderse…" de delitos variados. <u>Ibíd</u>. Aunque el legislador no mencionó el homicidio involuntario al enumerar ciertos delitos en la Exposición de Motivos, es claro que la lista no fue exhaustiva, pues se refiere a los delitos enumerados, "entre otros." <u>Ibíd</u>. Más aun, la Exposición de Motivos no distinguió entre delitos de negligencia o intención específica, sino que hizo claro lo que surge del texto de la ley: "Existe consenso en que **cualquier** tipo de delito que se cometa contra una persona de edad avanzada debe constituir una circunstancia agravante..." (énfasis suplido). Así pues, no se puede descartar la aplicación de ese agravante a este caso.

IV

En conclusión, este Tribunal resuelve hoy que la norma de <u>Apprendi</u> y su progenie aplica a los procedimientos penales en los tribunales de Puerto Rico. Por consiguiente, por imperativo de la Sexta Enmienda de la Constitución federal, para imponer

una pena agravada, por encima de la pena máxima estatutaria establecida para el delito imputado, tiene que concurrir alguna de las siguientes circunstancias: (1) que el acusado admita los hechos que agravan la pena; (2) que sea el jurado quien determine esos hechos más allá de duda razonable; (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia; o por excepción, (4) que el agravante se trate de una convicción previa. El texto de la Regla 171 de Procedimiento Criminal, _supra_, es enteramente compatible con estas alternativas. El problema de inconstitucionalidad en este caso surge en la aplicación de la regla al determinarse los agravantes sin la intervención de un jurado ni la anuencia del acusado, y por mera preponderancia de prueba.

Devuelto el caso al Tribunal de Primera Instancia, corresponderá al Ministerio Público decidir, en el ejercicio de su discreción, si interesa probar los hechos agravantes, más allá de duda razonable y ante un jurado insaculado para ese propósito, o si se allana a que se sentencie al señor Santana Vélez a la pena fija de un (1) año que el Artículo 86 del Código Penal de 1974, _supra_, establecía para el delito de homicidio involuntario, cuando se cometieron los hechos.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Recurrido

          v.

Jaime Santana Vélez

      Peticionario

CC-2007-65

Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo.

San Juan, Puerto Rico, a 13 de octubre de 2009.

La Mayoría reconoce que la Enmienda Sexta de la Constitución de Estados Unidos que garantiza en todo proceso criminal al acusado un juicio rápido y público por un jurado imparcial de un estado de la Unión y distrito donde se haya cometido el delito es un derecho fundamental que protege a las personas que residen o transitan por la jurisdicción de ese estado. Sostienen que dicha protección individual aplica a los estados de la Unión a través de la clausula del debido proceso de ley de la Enmienda Decimo Cuarta de la Constitución de los Estados Unidos. Compartimos tal criterio.

Estamos conformes con el criterio de la Mayoría a los efectos que "[d]esde que Duncan v. Lousiana, 391 U.S. 145 (1968) resolvió que (el derecho a juicio por jurado) es ´fundamental´ y, como tal aplicable a los estados… parece razonable concluir que ese derecho es aplicable a Puerto Rico bajo la doctrina de incorporación territorial".

No obstante, la Mayoría en este caso dispone que la Sentencia con agravantes impuesta al aquí peticionario de reclusión por tres (3) años, bajo el beneficio de sentencia suspendida, es inconstitucional a la luz de la jurisprudencia del Tribunal Supremo de Estados Unidos. Entiende la Mayoría que la pena máxima que podía imponer el Tribunal de Primera Instancia era la pena fija de un(1) año dispuesta por el Código Penal de 1974, por no haber sido aceptados por el acusado ni presentados al jurado prueba sobre agravantes y no haber determinación alguna de dicho cuerpo sobre esos extremos. DISENTIMOS de tal criterio y curso de acción.

I

Por hechos acontecidos el 29 de noviembre de 2003 en el Municipio de San Germán, el Ministerio Público presentó el 9 de agosto de 2004 una denuncia por violación al Artículo 86 del Código Penal de 1974,[17] tipificado como homicidio involuntario, contra el aquí peticionario, señor Jaime Santana Vélez, en adelante Sr. Santana Vélez. Específicamente, se le imputó conducir negligentemente su

---

[17] 33 L.P.R.A.sec.4005.

vehículo de motor y de este modo haber causado la muerte del señor Atiliano Vázquez, quien en ese momento cruzaba por la calle.[18]

De conformidad con lo dispuesto en nuestro ordenamiento jurídico para el delito de homicidio involuntario el Sr. Santana Vélez fue juzgado mediante juicio por jurado.[19] Durante el juicio el Ministerio Público probó que el Sr. Santana Vélez actuó de manera negligente al no disminuir la velocidad del vehículo que conducía a pesar de que el sol le dificultaba la visibilidad en la carretera. En consecuencia, el jurado emitió veredicto de culpabilidad en contra de éste por el delito de homicidio involuntario.

Habiendo sido el acusado juzgado debidamente y encontrado convicto por el delito de homicidio involuntario, el Tribunal de Primera Instancia impuso al acusado el cumplimiento de la **sentencia con circunstancias agravantes**, siendo condenado a tres (3) años de reclusión bajo el privilegio de sentencia suspendida.[20] Además, el

---

[18] Denuncia. Anejo I del Recurso de *Certiorari,* página 1.

[19] Este delito es clasificado como menos grave con derecho a juicio por jurado, por lo que el Ministerio Público presentó el 3 de noviembre de 2004 el pliego acusatorio y se procedió a su lectura formal.

[20] El Artículo 86 del Código Penal, *supra*, dispone que cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años, de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. El Tribunal podrá

pago de una multa de $5,000.00 y la suspensión de su licencia de conducir. La sentencia emitida no especificó las circunstancias consideradas como agravantes del delito de homicidio involuntario.

Inconforme con la imposición de la pena agravada, el Sr. Santana Vélez apeló ante el foro intermedio apelativo. En síntesis, alegó que se violó su derecho constitucional a juicio por jurado ya que no se efectuó una vista para determinar la presencia de las circunstancias agravantes imputadas y, el jurado no tuvo la oportunidad de evaluar si tales circunstancias se establecían, más allá de duda razonable. Expresó además, que el foro primario no explicó a la defensa los fundamentos para la imposición de la pena con agravantes.[21]

Por su parte, el Ministerio Público en su alegato de réplica a la apelación planteó que no existía controversia real sobre los hechos agravantes por lo que no era necesario celebrar vista previa.[22]

El Tribunal de Apelaciones acogió el argumento del Ministerio Público y expuso en su sentencia las circunstancias que, a su juicio y, según planteadas en el alegato de réplica del Procurador General ante dicho foro,

---

imponer la pena de restitución en adición a la pena de reclusión establecida o ambas penas.

[21] Alegato presentado por la defensa ante el Tribunal de Apelaciones. Anejo VII, página 19-34.

[22] Alegato presentado por el Procurador General ante el Tribunal de Apelaciones, página 39.

fueron la base para incrementar el máximo estatutario de la pena impuesta al delito.

El Tribunal de Apelaciones entendió que, según prescribe la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 171, le eran de aplicación los incisos (b)(1)(G) y (O) de la referida regla.[23]

El inducir a perjurio, conducta que se concluyó se configuró cuando el acusado se comunicó en tres ocasiones con una testigo de cargo que presenció los hechos. De acuerdo con la testigo, éste le expresó que "no iba a alta velocidad, y ella le contestó que iba a decir lo que había visto".[24]

El segundo agravante al amparo del inciso (O) de la Regla 171, *supra*, lo fue la edad avanzada de la víctima, Sr. Atilano Vázquez, quien tenía al momento de los hechos 83 años.

Por último, se consideró como agravante del delito de homicidio involuntario, el exceso del límite de velocidad dentro de la zona en la que conducía el Sr. Santana Vélez.

Por su parte el acusado planteó ante el Tribunal de Apelaciones que el exceder el límite de velocidad dentro de una zona y la muerte ocasionada constituye la negligencia y

---

[23] (G) El acusado amenazó a los testigos, ilegalmente evitó que los testigos asistieran a las vistas o los indujo a cometer perjurio o en cualquier otro modo obstaculizó el proceso judicial.

(O) La víctima del delito era una persona de sesenta (60) años o más de edad.

[24] Testimonio de la testigo ocular señora Mildred Vélez Pacheco. Anejo VI. Exposición narrativa de la prueba, página 2.

por tanto, los elementos constitutivos del delito de homicidio involuntario, razón por la cual no pueden ser considerados como agravantes. Además, sostuvo que el agravante que recae sobre la mayoría de edad de la víctima no le es de aplicación ya que el propósito del mismo es castigar aquellas situaciones en las cuales el acusado comete el delito aprovechando la situación de desventaja por edad de la víctima, elemento de intención que en el presente caso estuvo ausente.

En cuanto al agravante por inducir a perjurio a una testigo de cargo, el Sr. Santana Vélez sostuvo que su actuación no iba dirigida a inducir a la testigo a cometer perjurio y en efecto la testigo no incurrió en tal conducta. Sostuvo además, que no se desfiló prueba sobre las circunstancias agravantes.

Finalmente, el Tribunal de Apelaciones determinó que las comunicaciones del acusado con la testigo principal de la fiscalía y la negligencia crasa del peticionario al conducir su vehículo de motor constituían los agravantes que justificaban la imposición de la pena agravada sin la necesidad de celebrar una vista especial. Respecto a la edad avanzada de la víctima, expresó que: "por existir otros agravantes en el caso de autos no es necesario entrar a resolver esta controvesia"[25] confirmando de este modo la sentencia apelada.

---

[25] Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de Mayagüez, Anejo IX, página 48.

Inconforme aún, el Sr. Santana Vélez acude ante nos señalando que:

> **Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Instancia que decreta una sentencia con agravantes contra el peticionario, aduciendo a elementos inherentes en la tipificación del delito como agravantes e imputándole agravantes sin haberse probado más allá de duda razonable por [sic]el jurado.**

## II

El acusado plantea que por tratarse de un delito con derecho a juicio por jurado, era el jurado quien debía determinar las circunstancias agravantes conforme a los principios esbozados por el Tribunal Supremo de los Estados Unidos en Apprendi v. New Jersey,[26] y su progenie. En apoyo de su reclamo trae ante nuestra consideración lo resuelto en el caso Cunningham v. California.[27] Arguye además, que el exceso de velocidad no es una circunstancia agravante sino que constituye la forma de negligencia que configuró el homicidio involuntario. Veamos la aplicación de la casuística anteriormente citada a los hechos del presente caso.

## A.

La constitucionalidad de estatutos que imponen penas mayores a un acusado ha sido recientemente discutida por la

---

[26] 531 U.S. 466 (2000).

[27] 549 U.S. 270 (2007).

Corte Suprema de los Estados Unidos en los casos <u>Cunningham</u> <u>v. California</u>, *supra,* <u>Rita v. United States</u>, 551 U.S. 338(2007) y <u>Oregon v Ice</u>, 555 U.S.____(2009), resuelto el 14 de enero de 2009. La reciente jurisprudencia reafirma y elabora sobre la doctrina establecida en los casos <u>Apprendi</u> y su progenie en torno a las garantías contenidas en la Sexta Enmienda de los Estados Unidos.[28]

En <u>Apprendi v. New Jersey</u>, *supra*, el Tribunal Supremo de los Estados Unidos analizó la constitucionalidad de un estatuto del estado de New Jersey que permitía al juez, al momento de dictar sentencia, utilizar factores que desfilaron durante el juicio como elementos para aumentar la pena máxima de un delito sin éstos haber sido considerados por el jurado a base del criterio de "prueba más allá de duda razonable".

El acusado en este caso, el Sr. Charles Apprendi, fue arrestado por disparar hacia el hogar de una familia afroamericana que recientemente se había mudado al vecindario. Durante el interrogatorio con la Policía éste admitió que disparó al hogar de la familia por éstos ser negros y no desearlos en el vecindario. El Sr. Charles Apprendi había realizado una alegación pre acordada con el Ministerio Público en la que se declaró culpable, entre

---

[28] *In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, an to be informed of the nature and cause of the accusation; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.*

otros cargos, del delito en segundo grado consistente en utilizar un arma de fuego con propósitos ilegales. El estatuto de New Jersey tipificaba el utilizar un arma de fuego para propósitos ilegales como delito de segundo grado, con pena entre 5 a 10 años. Sin embargo, dicho estatuto permitía que esta pena fuese aumentada entre 10 a 20 años si el juez, por preponderancia de la prueba, determinaba que el delito había sido cometido con el propósito de intimidar a un individuo, o grupo de individuos por razones de raza, color, género, impedimento, religión, orientación sexual, u origen étnico.[29] Es decir, se trataba de un agravante estatutario dispuesto para aquellos "actos motivados con la intención de intimidar cierto grupo".

Por no estar alegado en la acusación, el Sr. Charles Apprendi, no se declaró culpable del agravante constitutivo de "actos motivados con la intención de intimidar cierto grupo". Sin embargo, luego de escuchar la prueba el juez determinó por preponderancia de la prueba que el delito fue cometido por motivaciones de prejuicio racial ("hate crimes"). Por consiguiente, fue sentenciado a 12 años de prisión por ese cargo, dos años más sobre la sentencia máxima autorizada para el delito sin agravantes.

El Tribunal Supremo de los Estados Unidos aceptó revisar la decisión apelada y resolvió que el estatuto de New Jersey que permitía al juez determinar por preponderancia de prueba los denominados "hate crimes" y,

---

[29] N. J. Stat. Ann. Secc. 2C: 44-3 (e).

en consecuencia, aumentar el término de una sentencia criminal por encima del máximo estatutario basado en esos hechos agravantes, constituía una violación al derecho por jurado consagrado en la Enmienda Sexta de la Constitución de Estados Unidos.[30]

Cabe señalar que conforme a ésta decisión, **cualquier hecho** que tienda a aumentar una sentencia más allá del límite estatutario, tiene que ser alegado en la acusación y probado por el Ministerio Público más allá de duda razonable sin distinción entre "elementos del delito" versus "elementos para dictar sentencia".[31] De éste modo se

---

[30] *"The Sixth Amendment demands that the fact of a prior conviction, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt". Because the hated-crime enhancement increased the punishment available to the sentencing judge instead of raising the floor on the sentencing range as a mandatory minimum would , the Court would not allow the hated-crime enhancement to escape the constitutional protections."* Apprendi v. New Jersey,530 U.S 466(2000).

[31] Así lo resolvimos en Pueblo v. Montero Luciano, 169 D.P.R.____2006; 2006   T.S.P.R. 158, donde expresamos que la Regla 48 de Procedimiento Criminal y la jurisprudencia previa exigen alegar la reincidencia, ya que no constituye un "sentencing factor" y al ser considerada tiene el efecto de **aumentar la sentencia**. En esa ocasión resolvimos que la Sec 7.04(b)(4) y (b)(5)era inconstitucional pues violaba el derecho a notificación de cargos y a un debido proceso de ley. Aclaramos que, la reincidencia equivale a los "enhancements" en la jurisprudencia federal.

En Apprendi v. New Jersey ,*supra* se definen los "elementos para dictar sentencia" o " *sentencing factors*" de la manera siguiente: "any element not found by a jury that nevertheless affected the sentence impose by the judge".

Cabe señalar que al respecto, en los casos Almendarez-Torres v. U.S., 523 U.S. 224 (1998) y Castillo v. U.S., 530 U.S. 120 (2000), el Tribunal Supremo Federal argumentó la diferencia entre " hechos que son elementos del delito

garantiza el debido proceso de ley y el derecho a juicio por jurado.

Lo pautado por el Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, *supra*, ha sido reafirmado posteriormente en decisiones relativas a éste tema. En Blakely v. Washington,[32] el Sr. Ralph Howard Blakely fue acusado por el delito de secuestro en primer grado pero hallado culpable por secuestro en segundo grado.

El sistema de sentencia de Washington – "The Reform Act" –bajo el cual fue sentenciado el Sr. Blakely, disponía para éste delito una pena máxima de 10 años de prisión.[33] Este sistema establecía que un acusado no podía recibir una sentencia sobre el "standard range" establecido para el delito, es decir sobre 49 a 53 meses de prisión. También dicho estatuto o "Reform Act" contenía unas guías

y hechos relevantes únicamente para dictar sentencia. Sin embargo, el Tribunal Supremo de Estados Unidos resolvió a favor de que los hechos que tendiesen a aumentar la pena, tenían que ser considerados por el jurado. No obstante, más enfáticos aún, en Apprendi, *supra*, el Tribunal Supremo Federal expresó lo siguiente:

> *"merely labelling the hate-crime enhancement as a **sentencing factor** could not allow New Jersey to escape constitutional requirements".*

[32] 542 U.S. 296 (2004).

[33] The Reform Act provided:

> *If no facts beyond those reflected in the jury´s veredict were found by the trial judge, a defendant could not receive a sentence above a "standard range" of 49 to 53 months. The Reform Act permitted but did not required a judge to exceed that standard range if she found substantial and compelling reasons justifying an exceptional sentence".* Blakely v. Washington, 542 U.S. 296, 299 (2004).

mandatorias de circunstancias agravantes las cuales justificaban el aumento de la sentencia, si el juez encontraba *"substantial and compelling reasons justifying an exceptional sentence."*[34]

El juez impuso al Sr. Blakely una pena de 90 meses basado en que el delito fue realizado con "deliberada maldad", uno de los factores enumerados en el estatuto de Washington.[35]

Acogido el recurso, el Tribunal Supremo de los Estados Unidos resolvió que el sistema de imposición de penas del Estado de Washington bajo "The Reform Act" era inconstitucional, ya que violaba la Sexta Enmienda al autorizar que el juez aumentara la pena máxima para el delito según sus propias determinaciones de hechos.

En efecto, el Tribunal Supremo de Estados Unidos sostuvo, que cualquier factor distinto a una convicción previa que pudiera agravar la pena máxima estatutaria de un delito, tenía que ser admitido por el acusado o sometido al jurado, y sostenido por hechos admitidos o probados por el jurado más allá de duda razonable. Por consiguiente, dado que la "deliberada maldad" no había sido admitida por el Sr. Blakely ni contenida en el pliego acusatorio, el juez

---

[34] Wash. Rev. Code Ann. sec. 9.94 A (120) 2 (2000).

[35] Blakely v. Washington, 542 U.S. 296, 300 (2004).

no tenía discreción para utilizar éste hecho y aumentar la sentencia sobre el máximo estatutario de 53 meses.[36]

Posteriormente, en United States v. Booker,[37] se extendió la norma establecida en Blakely v. Washington, *supra*, al "Federal Sentencing Guidelines". Estas guías -al igual que las contenidas en el sistema de sentencia de Washington, "Reform Act" eran mandatorias, y permitían que el juez tomara en cuenta hechos adicionales a los desfilados ante el jurado, y por preponderancia de la prueba, aumentar el margen estatutario establecido.

El Sr. Freddie Booker fue hallado culpable en un juicio por jurado por el delito de posesión y distribución de drogas. El "Federal Sentencing Guidelines" establecía un "statutory range" de 210 a 262 meses de prisión. Sin embargo, el juez consideró que la cantidad de sustancia controlada que el Sr. Booker poseía era mayor que la determinada por el jurado. Teniendo en cuenta este hecho decidió sentenciar al acusado a 360 meses de prisión.

El Tribunal Supremo de los Estados Unidos resolvió que las disposiciones de la Guía de Sentencia Federal que ordenaban de manera mandatoria al juez sopesar hechos que no fueran considerados por el jurado para imponer una

---

[36] Al respecto, el Juez Antonin Scalia, quien articuló la Opinión Mayoritaria del Tribunal expresó que tal como se estableció en Apprendi, *supra*:

> "judge´s authorithy to sentence derives wholly from the jury´s verdict. Without that restriction, the jury would not exercise the control that the Framers intended"

[37] 543 U.S. 220 (2005).

sentencia, eran inconstitucionales y violaban el derecho salvaguardado en la Sexta Enmienda.[38] En consecuencia, fueron transformadas en recomendaciones para orientar al juez en el ejercicio de su discreción.[39] De esta manera, el juez no estaba atado al "sentencing range" de las guías mandatorias y la revisión apelativa de éstas sentencias estaría sujeta al criterio de razonabilidad.[40] Sobre el particular, el Tribunal Supremo de los Estados Unidos expresó lo siguiente:

> "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather tan required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. **We have never doubt the authorithy of a judge to exercise broad discretion in imposing a sentence within a statutory range**. Indeed, everyone agrees that the constitutional issues presented by [this case] would have been avoided entirely if Congress had omitted from the Federal

---

[38] "The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges" Blakely v. Washington, *supra*.

[39] La secciones modificadas lo fueron: 18 U.S.C.sec.3553 (b) (1) y 18 U.S.C.sec.3742(e).

La Corte Suprema Federal evaluó dos tendencias posibles:

> a)…"would engraft onto the existing system today´s Sixth Amendment jury trial requirement"

> y la segunda y acogida por la Corte Suprema Federal:

> b)"made the guidelines advisory while the same time "maintaining a strong connection between the sentence imposed and the offender´s real conduct– a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve". (Énfasis nuestro).

[40] U.S. v. Booker, 543 U.S. 220, 261 (2005).

> Sentencing Reform Act the provision that make the Guidelines binding on district judges… For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."[41]

Dos (2) años más tarde, el Tribunal Supremo de Estados Unidos expidió recurso presentado por el Sr. John Cunningham. El mismo fue resuelto el 22 de enero de 2007.[42] En este caso, en el Estado de California se encontró culpable al Sr. Cunningham por el delito de agresión sexual contra su hijo.

El sistema de sentencia determinada de California, "DSL"[43] disponía para éste delito una pena entre <u>6,12,16 años</u>. Este sistema, "DSL" funcionaba a base de **triadas de sentencias fijas** en las cuales **el juez no tenía discreción** para seleccionar dentro del margen establecido, es decir entre 6 y 16 años. En consecuencia, estaba obligado a imponer <u>la pena media</u> a un acusado de delito en ausencia de circunstancias agravantes o atenuantes.[44] Sin embargo, si el juez encontraba algún hecho adicional que estuviera

---

[41] Íd., en la pág. 233. (Énfasis nuestro).

[42] <u>Cunningham v. California</u>, 549 U.S. 270 (2007).

[43] En 1970, el Estado de California adoptó el sistema de Sentencia determinada, "DSL" con el objetivo de mantener la uniformidad y asegurar la proporcionalidad del castigo y el delito.

[44] "Cunningham´s sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years." (Énfasis nuestro, Opinión Mayoritaria, Juez Ginsburg, <u>Cunningham v. California</u>, *supra*.)

razonablemente relacionado con la decisión emitida por el jurado podía imponer la pena agravada. Estos hechos se establecían por preponderancia de la prueba y debía hacerlos constar oralmente en el record. En Cunningham v. California, *supra*, el Juez, luego del veredicto del jurado, consideró la vulnerabilidad de la víctima y la conducta violenta del Sr. Cunningham, como circunstancias agravantes que justificaban imponerle la pena agravada de 16 años.

En atención al reclamo del Sr. Cunningham, el Tribunal Supremo de Estados Unidos determinó que el sistema de sentencia determinada, "DSL", violaba las garantías y salvaguardadas de la Sexta y Decimocuarta Enmienda de la Constitución de Estados Unidos toda vez que otorga al juez autoridad única para hacer determinaciones de hecho para una pena agravada o atenuada. Además, **carecía de discreción** para imponer una sentencia dentro del intervalo o "range" estatutario.

Fundamentó que, con excepción de casos de convicciones previas, la determinación fáctica necesaria para agravar las penas era provincia exclusiva del jurado, las cuales tenían que ser probadas más allá de duda razonable. Por consiguiente, el sistema de triada de sentencia establecido impedía que el juez ejerciera su discreción para considerar por sí mismo hechos que le permitieran seleccionar una sentencia entre 6 y 16 años.

El Tribunal Supremo de Estados Unidos resolvió que el Estado de California podía adoptar cualquiera de los dos (2) sistemas incorporados por muchos estados y que **son**

**consistentes** con lo resuelto en los casos de *Apprendi y Blakely, supra*. Se expresó el Alto Foro sobre este asunto de la forma siguiente:

> "We noted that several States have modified their systems in the wake of *Apprendi and Blakely* to retain determinate sentencing.
>
> They have done so by:
>
> a) calling upon the jury –either at a trial or in a separated sentencing proceeding—to find any fact necessary to imposition of an elevated sentence. As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements.
>
> b) "**Other states have chosen to permit judges genuinely to exercise broad discretion …within a statutory range which "everyone agrees", encounters no Sixth Amendment shoal**."[45]

En Rita v. United Status,[46] el Tribunal Supremo de Estados Unidos resolvió que, compatible con lo decidido en Cunningham v. California, *supra*, una sentencia dictada con circunstancias agravantes se presume válida si la misma está comprendida dentro de los parámetros establecidos en el estatuto.[47]

Conforme a la decisión del Tribunal Supremo de los Estados Unidos, existen dos (2) alternativas para evitar una violación de la Sexta Enmienda. En un sistema de sentencia determinada se puede, presentar al jurado todo

---

[45] Cunningham v. California, *supra*. (Énfasis nuestro).

[46] 127 S. Ct. 2456 (2007).

[47] "This Court´s Sixth Amendment cases do not automatically forbid a sentencing court to take account factual matters not determined by a jury and the increase the sentence in consequence" Rita, *supra*, págs. 2465-2466.

hecho que sea pertinente para la imposición de una sentencia agravada; o permitir que los jueces ejerzan su discreción **dentro del margen estatutario, lo cual no presentaría problemas de violación al derecho a juicio por jurado**. Nos inclinamos por la segunda alternativa la cual no está reñida con nuestro sistema de imposición de sentencia.[48]

Nuestro ordenamiento jurídico no está basado en un sistema de triada de sentencia sino que funciona a base de un "sentencing range" o intervalo de sentencia donde se establecen penas que fluctúan hacia un mínimo, en presencia de atenuantes y hacía un máximo, en presencia de agravantes. Esto permite que el juez ejerza su discreción conforme a las guías codificadas en la Regla 171 de Procedimiento Criminal,[49] la cual orienta la discreción del juez dentro del intervalo de la pena. La Regla 162.4 de Procedimiento Criminal,[50] establece los procedimientos adecuados para evitar un abuso de discreción y ofrecer al acusado las garantías del debido proceso de ley.

Atendido el problema constitucional planteado ante nos al amparo de la Sexta Enmienda de la Constitución de los Estados Unidos, procedemos a evaluar el aspecto procesal de la imposición de la pena con circunstancias

---

[48] Ejemplo de ello lo es Pueblo v. Pérez Zayas, 116 D.P.R. 197 (1985). En dicho caso discutimos el modo de proceder cuando el juez tiene ante su consideración circunstancias atenuantes y agravantes.

[49] 34 L.P.R.A. Ap. II R. 171.

[50] 34 L.P.R.A. Ap. II R. 162.4.

agravantes, en ausencia de la celebración de una vista evidenciaria de naturaleza adversativa.

                                B

El Sr. Santana Vélez fue acusado por el delito de homicidio involuntario[51] y sentenciado el 14 de septiembre de 2005. La conducta del peticionario fue incurrida durante la vigencia del anterior Código Penal, derogado el 9 de agosto de 2004.

En Puerto Rico mediante la Ley 110 del 4 de junio de 1980,[52] se eliminó el sistema de sentencia indeterminada y se estableció un sistema de pena fija, que permitía aumentar o disminuir la pena fija conforme a la presencia de circunstancias agravantes o atenuantes. Bajo el sistema de sentencia determinada, el juez no posee la discreción "amplia" que concede el sistema de sentencia indeterminada pero retiene cierto grado de discreción para apartarse de la pena fija establecida para el delito por el cual es hallado culpable el acusado, ya para reducirla o para aumentarla.[53]

El Código Penal de 1974, incorporó este modelo de Sentencias Determinadas.[54] La pena fija en el Código Penal

---

[51] Artículo 86 del Código Penal de 1974.

[52] 25 L.P.R.A. sec. 448.
[53] E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. III, Editorial Forum (1993), pág. 541.

[54] Actualmente, el Nuevo Código Penal (2004), según enmendado, provee un intervalo de pena para cada delito. El Artículo 74 del Nuevo Código Penal, *supra*, ofrece unas guías que sirven para orientar al juez en el ejercicio de

de 1974 para el delito de homicidio involuntario se estableció de acuerdo a la existencia de circunstancias agravantes o atenuantes durante el transcurso de la acción punible. La sanción básica constituía un término de reclusión de un (1) año. De existir circunstancias atenuantes, se podía reducir la reclusión a seis (6) meses y un (1) día, y de existir circunstancias agravantes, ésta podía ser incrementada a tres (3) años.

En nuestra jurisdicción el sistema de imposición de la pena con circunstancias agravantes y atenuantes se rige por lo dispuesto en la Regla 171 de Procedimiento Criminal, *supra*, la cual dispone en lo pertinente lo siguiente:

> El Tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o a la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena.
> …

Durante la vigencia del Código Penal de 1974, se disponía que los factores pertinentes para el ejercicio de la discreción del juez eran los establecidos en la Regla 171 de Procedimiento Criminal, *supra,* en armonía con el Artículo 60, del Código Penal derogado.[55]

---

su discreción al momento de escoger la pena según el grado de severidad correspondiente al delito.

[55] 33 L.P.R.A. sec. 3284. El Artículo 60 del Código Penal de 1974, proveía una enumeración de circunstancias personales y de circunstancias relacionadas con el hecho delictivo las cuales debían ser consideradas por el juez al imponer la sentencia. El referido artículo disponía:

> Los objetivos generales que informan la imposición de la pena son los siguientes:

Por tanto, al ejercer su <u>discreción</u> los jueces debían regirse por los criterios establecido en la Regla 171 de Procedimiento Criminal, *supra*, y el Artículo 60 del Código Penal de 1974, conforme a los hechos y circunstancias de

(a) la protección de la sociedad y la prevención de la delincuencia,(b) el castigo justo al autor del delito,(c) la rehabilitación moral y social del autor dentro de los recursos disponibles del Estado,(d) el logro de la uniformidad en la imposición de la pena, (e) la consideración de la naturaleza disuasiva de la pena.

Dentro de los límites establecidos por la ley, las penas se fijarán de acuerdo a la mayor o menor gravedad del hecho cometido y tomando en consideración, entre otras, las siguientes circunstancias:

(a) la naturaleza de la acción u omisión delictuosa, (b) los medios empleados,(c) la importancia de los deberes transgredidos.,(d) la extensión del daño [o] del peligro causado, (e) la edad, educación, historial social y reputación del autor, (f)la conducta relacionada con el delito antes, durante y después de la comisión del mismo,(g) La calidad de los móviles del hecho,(h) la conducta de la víctima relacionada con la transacción delictuosa.

Las relaciones, circunstancias y cualidades personales que aumenten o disminuyan la pena, afectará[n] solamente a la persona a quien correspondan."

La Dra. Dora Nevares Muñiz criticó en su análisis el señalamiento de circunstancias del referido artículo, así como la Regla 171 de Procedimiento Criminal, *supra*, porque facilitaban la disparidad en la imposición de la sentencia, propiciando disparidad y penas no proporcionales a la severidad del delito. Es decir, en ocasiones las penas impuestas en el Código Penal de 1974, no correspondían a la severidad del delito ni propiciaban la uniformidad en las sentencias para personas que cometen delitos con similar severidad. **(Sobre ésta discusión, *véase* Dora Nevares Muñiz, *Código Penal de Puerto Rico*, Revisado y Comentada, Análisis Editorial del Artículo 60, Instituto para el Desarrollo del Derecho, Edición 1995, pág. 91. *Véase además*, Dora Nevares Muñiz, *Derecho Penal Puertorriqueño*, Parte General, Quinta Edición Revisada, Instituto para el Desarrollo del Derecho, pág. 60).**

cada caso en particular y a la situación individual de cada convicto.[56]

Al interpretar las disposiciones antes citadas resolvimos que para sentenciar válidamente a un acusado por un delito cuando median circunstancias agravantes, **debe haberse presentado prueba sobre la presencia de tales circunstancias** durante una vista evidenciaría de naturaleza adversativa.[57] La evaluación sobre la presencia o ausencia de circunstancias agravantes o atenuantes la gobierna el derecho penal sustantivo.

La Regla 162.4 de Procedimiento Criminal, *supra* dispone, lo siguiente:

> Tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Si de las alegaciones sometidas surgiere que existe controversia real sobre un hecho material que requiriere la presentación de prueba, entonces el tribunal celebrará una vista en el más breve plazo posible, en la cual:
>
> a) El Fiscal podrá presentar prueba de circunstancias agravantes que a su juicio justifiquen que se dicte una sentencia rigurosa o el que no se deban suspender los efectos de la sentencia o, en caso contrario, que se impongan condiciones estrictas.
> b) El acusado podrá presentar prueba de circunstancias atenuantes que a su juicio justifiquen que se dicte una sentencia benigna o que se suspendan los efectos de la misma.

---

[56] Pueblo v. Echevarría Rodríguez 128 D.P.R. 299, 371 (1991); Pueblo v. Castro Muñiz, 118 D.P.R. 625 (1987).

[57] Pueblo v. González Olivencia, 116 D.P.R. 614 (1985). Aquí establecimos que, no puede considerarse como prueba de agravantes la información del oficial probatorio en el informe pre sentencia.

Como bien indica la Regla 162.4, *supra*, en los casos donde existe una solicitud para que el acusado sea sentenciado con circunstancias agravantes o atenuantes se puede celebrar una vista. Dicha vista puede ser a solicitud de parte o ser señalada *"motu propio"* por el Tribunal. Esta vista permite controvertir las circunstancias agravantes o atenuantes y de este modo orientar la discreción del juez al momento de seleccionar la pena dentro del margen estatutario. Cabe señalar que la vista tal y como está cumple una función orientadora que se limita a los "sentencing factors", es decir, circunstancias accidentales que influyen en la determinación de la pena pero que, en sí mismos no constituyen el injusto penal.

No obstante, a pesar de que la Regla 162.4 de Procedimiento Criminal, *supra*, dispone dicho procedimiento, la jurisprudencia interpretativa de dicha regla ha reiterado que si de la **prueba presentada en el juicio** surgen las circunstancias agravantes o atenuantes y **no existe controversia real** sobre la presencia de alguna de tales circunstancias, <u>no hay necesidad de celebrar la vista</u>.[58] Así también, hemos expresado que tampoco es necesario celebrar dicha vista cuando las <u>partes no la solicitan</u> y no existe controversia real sobre un hecho material que requiera la presentación de prueba.[59]

---

[58] <u>Pueblo v. Castro Muñiz</u>, 118 D.P.R. 625, 636 (1987); <u>Pueblo v. Santiago Acosta</u>, 121 D.P.R. 727, 743 (1988); <u>Pueblo v. Rodríguez Santana</u>, 146 D.P.R. 860 (1998).

[59] *Íd.*

Por otro lado, la Regla 162.4 de Procedimiento Criminal, *supra*, requiere que los tribunales expliquen verbalmente o por escrito las razones por las cuales imponen una pena particular.[60] Esta explicación cumple el objetivo de evitar la "arbitrariedad en la imposición de las penas". Cuando el Tribunal de Primera Instancia expone las razones que ha tenido al imponer una pena con agravantes o atenuantes, facilita la función revisora de los tribunales apelativos.

## III

El reconocer a nuestros jueces la discreción dentro del margen estatutario establecido; no está reñido con las disposiciones de la Sexta Enmienda de la Constitución de los Estados Unidos ni con la Constitución de Puerto Rico. Esta discreción, dentro del margen estatutario, permite que el juez evalúe las circunstancias agravantes y atenuantes que modifican las penas, modo de proceder que es cónsono con lo resuelto en Cunningham v. California, *supra*.

A tenor con la Regla 162.4 de Procedimiento Criminal, *supra*, tanto el Ministerio Público como la defensa pueden solicitar al Tribunal que escuche prueba de circunstancias agravantes o atenuantes a los fines de orientar la discreción judicial en la imposición de la pena dentro del margen estatutario. Esta vista no tiene que celebrarse en presencia del jurado y la misma es imperativa siempre que

---

[60] Pueblo v. Castro Muñíz, *supra*.

exista controversia real sobre algún hecho material que requiera la presentación de prueba.

En el caso ante nos, el Sr. Santana Vélez fue encontrado culpable por un jurado por el delito de homicidio involuntario bajo el derogado Código Penal de 1974. Los elementos constitutivos del delito de homicidio involuntario, en esta modalidad, son la acción negligente del acto y como resultado, la muerte de un ser humano. La pena básica para dicho delito es un término de reclusión de un (1) año. De existir atenuantes, se podía reducir a seis (6) meses y un (1) día y de estar presentes agravantes, la pena podía ser incrementada hasta tres (3) años.

El foro sentenciador impuso al Sr. Santana Vélez la pena máxima de tres (3) años dispuesta en el Código Penal de 1974 para los casos en que estaban presentes circunstancias agravantes. El acusado se acogió al beneficio de sentencia suspendida según dispuesto en la Ley Núm. 259 del 3 de abril de 1946.[61]

La sentencia del Tribunal de Primera Instancia no hizo mención alguna de las circunstancias agravantes presentes para aumentar la pena fija establecida para el delito. No surge del expediente que, en su momento, el Ministerio Público haya alegado y solicitado presentar prueba sobre la presencia de circunstancias agravantes que permitieran al juez sentenciador razonablemente imponer una pena de conformidad. Por tal razón, la defensa no solicitó la

---

[61] 34 L.P.R.A. sec. 1026.

celebración de una vista adversativa a los fines de controvertir la prueba en su contra.

El Tribunal de Apelaciones, sin poseer los elementos de juicio necesarios, acogió el argumento presentado por el Procurador General y determinó como circunstancias agravantes las llamadas que el Sr. Santana Vélez hiciera a la testigo ocular del accidente como un intento de "persuadir o tratar de inducir a perjurio" a dicha testigo.[62] Asimismo, que la víctima era mayor de 60 años[63] y, finalmente, que "el conductor haya continuado su marcha a dicha velocidad a pesar de tener la luz del sol obstruyéndole la visión".[64]

Los hechos presentes manifiestan que no se desfiló prueba sobre las circunstancias agravantes impuestas al Sr. Santana Vélez. Unas llamadas telefónicas no constituyen prueba suficiente para establecer sin más que el acusado indujo a perjurio a la referida testigo.

No desfiló prueba alguna durante el juicio sobre el contenido de las referidas conversaciones de manera que se pudiese concluir que el acusado intentó lograr un acuerdo con la testigo para que ofreciera testimonio falso, o que le propuso tal curso de acción.

---

[62] Regla 171 inciso (b) (1) (g) de Procedimiento Criminal, 34 L.P.R.A. R. 171.

[63] Regla 171 inciso (b) (1) (o) de Procedimiento Criminal, *supra.*

[64] Sentencia dictada por el Tribunal de Apelaciones. Anejo IX del Recurso de *Certiorari*, pág. 47.

Por otro lado, se le imputó como agravante el hecho de que la víctima era mayor de 60 años. Sobre el particular, la Ley 142 del 18 de julio de 1998 enmendó la Regla 171 de Procedimiento Criminal para incorporar los incisos "o" y "p" a fin de incluir como circunstancias agravantes que la víctima del delito fuera una persona de 60 años o más, o que el delito se cometiera en una institución, albergue u hogar para personas de 60 años o más. La intención legislativa, recogida en la Exposición de Motivos de dicha ley, va dirigida hacia aquellos delitos en los que hubo la intención criminal de aprovecharse de la avanzada edad de la víctima.[65] En el presente caso, es evidente que la edad de la víctima no constituyó un factor o elemento junto con el acto intencional de causarle daño que configure la comisión del delito de homicidio involuntario.

Por último, no surge del expediente que el Ministerio Público planteara durante la celebración de juicio, que se tomara en cuenta el exceso de velocidad como una circunstancia agravante. Precisamente, bajo las circunstancias particulares de éste caso, fue el exceso de velocidad la condición inherente a la negligencia propia del homicidio involuntario.[66]

---

[65] Exposición de Motivos de la Ley Núm. 142 de 18 de julio de 1998.

[66] *"Distíngase que, cuando se trata de muertes causadas por conductores de vehículos de motor, el acusado puede haber realizado varios actos ilegales que no equivalen a delitos menos graves. Por ejemplo, no tocar bocina cuando la ley lo requiere, conducir a velocidad mayor que el límite autorizado, no detenerse ante una señal de pare. En estos casos, si ocurre una muerte como consecuencia de tales*

A la luz de los hechos y principios expuestos, estimamos que en el presente caso, existen hechos controvertidos que exigen la presentación de prueba en una vista evidenciaria de naturaleza adversativa a los fines de orientar la discreción del juez en la imposición de la sentencia.

IV

Por los fundamentos antes expuestos disentimos respetuosamente del curso de acción de la Mayoría. Revocaríamos la sentencia apelada y devolveríamos el presente caso al Tribunal de Primera Instancia para que el Ministerio Público en una vista adversativa pruebe las circunstancias agravantes que tenga a bien, previamente alegadas y debidamente notificadas al aquí peticionario. Una vez el foro primario pueda determinar sobre este asunto estaría en posición de sentenciar al aquí peticionario.

*Efraín E. Rivera Pérez*
*Juez Asociado*

---

*actos será homicidio involuntario en la modalidad de negligencia."* (Énfasis nuestro). *Véase*, los comentarios al delito de Homicidio Involuntario, Dora Nevares Muñiz, *Código Penal de Puerto Rico*, Instituto para el Desarrollo del Derecho, Inc. Edición 1995, pág. 129-130.

*"Cuando la circunstancia agravante o atenuante es un elemento del delito o se trata de una condición que es inherente al delito no puede ser doblemente considerada al fijar la pena. En el derecho Comparado es lo que los tratadistas denominan caso de inherencia expresa e inherencia tácita."* Véase, los comentarios a la aplicabilidad de las circunstancias atenuantes o agravantes, Artículo 73, Dora Nevares Muñiz, *Código Penal de Puerto Rico*, Instituto para el Desarrollo del Derecho, Inc. Edición 2004-2005, pág. 100-101.